**JEWISH DEFENSE LEAGUE, Norman Spetner and Lillian Spetner, Petitioners,**

**v.**

**CITY OF ST. LOUIS, Mayor James F. Conway, William Wilson, Director of Streets, City of St. Louis, National Socialist Party of America (Nazis), Defendants.**

**No. 78–281C(2).**

United States District Court, E. D. Missouri, E. D.

April 21, 1978.

Sam Polur, New York City, Arthur H. Slonim, St. Louis, Mo., for petitioners.

Jack L. Koehr, City Counselor, Charles W. Kunderer, Associate City Counselor, St. Louis, Mo., for defendants, City of St. Louis, James F. Conway, Mayor, and William Wilson, Director of Streets.

No attorney enters appearance for National Socialist Party of America.

## MEMORANDUM

WANGELIN, District Judge.

In December of 1977 the National Socialist Party of America (Nazis) sought and received a permit to hold a parade on the streets of St. Louis, Missouri. The parade was scheduled for March 11, 1978. This action was filed to enjoin the march. The injunction was denied and the march was held. Plaintiff has amended the complaint seeking monetary damages.

The Jewish Defense League is an organization which seeks to defend the rights of members of the Jewish faith. The individual plaintiffs are both residents of St. Louis, Missouri, and members of the Jewish faith. The suit seeks recovery on what appears to be three theories, alleging jurisdiction under 28 U.S.C. § 1331. Plaintiffs claim that the Nazis have violated 22 U.S.C. §§ 611–621 requiring the registration of foreign agent. Plaintiffs also allege that the Nazis have conspired to commit an offense or fraud against the United States in violation of 18 U.S.C. § 371. Finally, petitioners challenge that the St. Louis City ordinances regulating parades as unconstitutional and allege that City officials acted contrary to law.

The complaint sets out briefly the infamous historical relationship between the German Nazi party and the Jewish people. It then alleges that City officials did not exercise the degree of constitutionally per-

missible control in reviewing the parade permit application, thereby abusing their authority. Petitioners allege that the Nazis, by wearing the symbols and uniforms of Nazi Germany, "are incitements to violence and assault and battery and present a clear and present danger to the security of the free citizens . . .". Finally, petitioners' claim that defendants' conduct has damaged "the United States, including petitioners, with proximate damages to petitioners' pecuniary interests."

■ Defendants Conway, Wilson and the City of St. Louis have moved to dismiss. A substantial questions exists as to whether petitioners have stated a cause of action. A cause of action may be implied from a statute only where such an action is necessary to achieve the purposes of the Act. Cf. *Bivens v. Six Unknown Named Agents of the F. B. I.,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Thus it is less than obvious that 22 U.S.C. §§ 611–621 or 18 U.S.C. § 371 furnish any foundation for a civil action. Further, petitioners' challenge to the St. Louis City ordinances is founded on a unique theory. Petitioners assume that the City has some responsibility to limit the First Amendment rights of United States citizens to the extent permitted by the decisions of the Supreme Court. *See, e. g., Cox v. Louisiana,* 379 U.S. 536, 554, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965). In view of our constitutional system of separation of powers, this theory lacks any foundation in logic. However, an antecedent question, whether petitioners have standing to maintain this action, obviates the need to decide if petitioners have stated a cause of action. Accordingly, this Court expressly avoids making such a decision.

■ The Supreme Court has stated "no principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 37, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976). Article III requires in general that petitioners allege a specific injury sufficient to demonstrate an interest in an actual case or controversy. It is doubtful that petitioners meet this general requirement. However, it is clear that they do not meet other more specific requirements.

■ For example, although the injury alleged does not need to be unique, it must be more than a "generalized grievance". *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Although few would dispute the justification of the antipathy towards the Nazis held by the Jewish Defense League, that interest is not such that would be considered more than a generalized claim.

Second, the injury alleged is not necessarily the direct result of the action challenged. *Joint Anti-Fascist Refugee Committee v. McGarth,* 341 U.S. 123, 153, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring). Had the City followed the stringent procedures suggested by petitioners there is no guarantee that a permit would not have been issued. It would be speculative to assume otherwise.

Finally, petitioners are seeking to invoke constitutional protections which do not extend to them under the circumstances of this case. Although *Warth* arose in a different context, it illustrates the problem.

The standing question . . . is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief.

*Warth, supra,* 422 U.S. at 500, 95 S.Ct. at 2206. The First Amendment has been construed to limit the power of states and local governments to restrict political expression through parades and gatherings. But the First Amendment protects those who seek to exercise their rights to express thoughts, not those who oppose such a right. No right of action can be implied on petitioners' behalf and they simply have no standing to challenge these ordinances on constitutional grounds.

Accordingly, defendants' motion will be granted and this action dismissed.