*389 MR. JUSTICE BRENNAN delivered the opinion of the Court.
The Fourth Amendment provides that:
"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."
In Bell v. Hood, 327 U. S. 678 (1946), we reserved the question whether violation of that command by a federal agent acting under color of his authority gives rise to a cause of action for damages consequent upon his unconstitutional conduct. Today we hold that it does.
This case has its origin in an arrest and search carried out on the morning of November 26, 1965. Petitioner's complaint alleged that on that day respondents, agents of the Federal Bureau of Narcotics acting under claim of federal authority, entered his apartment and arrested him for alleged narcotics violations. The agents manacled petitioner in front of his wife and children, and threatened to arrest the entire family. They searched the apartment from stem to stern. Thereafter, petitioner was taken to the federal courthouse in Brooklyn, where he was interrogated, booked, and subjected to a visual strip search.
On July 7, 1967, petitioner brought suit in Federal District Court. In addition to the allegations above, his complaint asserted that the arrest and search were effected without a warrant, and that unreasonable force was employed in making the arrest; fairly read, it alleges as well that the arrest was made without probable cause.[1] Petitioner claimed to have suffered great humiliation, *390 embarrassment, and mental suffering as a result of the agents' unlawful conduct, and sought $15,000 damages from each of them. The District Court, on respondents' motion, dismissed the complaint on the ground, inter alia, that it failed to state a cause of action.[2] 276 F. Supp. 12 (EDNY 1967). The Court of Appeals, one judge concurring specially,[3] affirmed on that basis. 409 F. 2d 718 (CA2 1969). We granted certiorari. 399 U. S. 905 (1970). We reverse.

I
Respondents do not argue that petitioner should be entirely without remedy for an unconstitutional invasion of his rights by federal agents. In respondents' view, however, the rights that petitioner assertsprimarily rights of privacyare creations of state and not of federal law. Accordingly, they argue, petitioner may obtain money damages to redress invasion of these rights only by an action in tort, under state law, in the state courts. In this scheme the Fourth Amendment would serve merely to limit the extent to which the agents could defend *391 the state law tort suit by asserting that their actions were a valid exercise of federal power: if the agents were shown to have violated the Fourth Amendment, such a defense would be lost to them and they would stand before the state law merely as private individuals. Candidly admitting that it is the policy of the Department of Justice to remove all such suits from the state to the federal courts for decision,[4] respondents nevertheless urge that we uphold dismissal of petitioner's complaint in federal court, and remit him to filing an action in the state courts in order that the case may properly be removed to the federal court for decision on the basis of state law.
We think that respondents' thesis rests upon an unduly restrictive view of the Fourth Amendment's protection against unreasonable searches and seizures by federal agents, a view that has consistently been rejected by this Court. Respondents seek to treat the relationship between a citizen and a federal agent unconstitutionally exercising his authority as no different from the relationship *392 between two private citizens. In so doing, they ignore the fact that power, once granted, does not disappear like a magic gift when it is wrongfully used. An agent actingalbeit unconstitutionallyin the name of the United States possesses a far greater capacity for harm than an individual trespasser exercising no authority other than his own. Cf. Amos v. United States, 255 U. S. 313, 317 (1921); United States v. Classic, 313 U. S. 299, 326 (1941). Accordingly, as our cases make clear, the Fourth Amendment operates as a limitation upon the exercise of federal power regardless of whether the State in whose jurisdiction that power is exercised would prohibit or penalize the identical act if engaged in by a private citizen. It guarantees to citizens of the United States the absolute right to be free from unreasonable searches and seizures carried out by virtue of federal authority. And "where federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief." Bell v. Hood, 327 U. S., at 684 (footnote omitted); see Bemis Bros. Bag Co. v. United States, 289 U. S. 28, 36 (1933) (Cardozo, J.); The Western Maid, 257 U. S. 419, 433 (1922) (Holmes, J.).
First. Our cases have long since rejected the notion that the Fourth Amendment proscribes only such conduct as would, if engaged in by private persons, be condemned by state law. Thus in Gambino v. United States, 275 U. S. 310 (1927), petitioners were convicted of conspiracy to violate the National Prohibition Act on the basis of evidence seized by state police officers incident to petitioners' arrest by those officers solely for the purpose of enforcing federal law. Id., at 314. Notwithstanding the lack of probable cause for the arrest, id., at 313, it would have been permissible under state law if effected *393 by private individuals.[5] It appears, moreover, that the officers were under direction from the Governor to aid in the enforcement of federal law. Id., at 315-317. Accordingly, if the Fourth Amendment reached only to conduct impermissible under the law of the State, the Amendment would have had no application to the case. Yet this Court held the Fourth Amendment applicable and reversed petitioners' convictions as having been based upon evidence obtained through an unconstitutional search and seizure. Similarly, in Byars v. United States, 273 U. S. 28 (1927), the petitioner was convicted on the basis of evidence seized under a warrant issued, without probable cause under the Fourth Amendment, by a state court judge for a state law offense. At the invitation of state law enforcement officers, a federal prohibition agent participated in the search. This Court explicitly refused to inquire whether the warrant was "good under the state law . . . since in no event could it constitute the basis for a federal search and seizure." Id., at 29 (emphasis added).[6] And our recent decisions regarding electronic surveillance have made it clear beyond peradventure that the Fourth Amendment is not tied to the *394 niceties of local trespass laws. Katz v. United States, 389 U. S. 347 (1967); Berger v. New York, 388 U. S. 41 (1967); Silverman v. United States, 365 U. S. 505, 511 (1961). In light of these cases, respondents' argument that the Fourth Amendment serves only as a limitation on federal defenses to a state law claim, and not as an independent limitation upon the exercise of federal power, must be rejected.
Second. The interests protected by state laws regulating trespass and the invasion of privacy, and those protected by the Fourth Amendment's guarantee against unreasonable searches and seizures, may be inconsistent or even hostile. Thus, we may bar the door against an unwelcome private intruder, or call the police if he persists in seeking entrance. The availability of such alternative means for the protection of privacy may lead the State to restrict imposition of liability for any consequent trespass. A private citizen, asserting no authority other than his own, will not normally be liable in trespass if he demands, and is granted, admission to another's house. See W. Prosser, The Law of Torts § 18, pp. 109-110 (3d ed. 1964); 1 F. Harper & F. James, The Law of Torts § 1.11 (1956). But one who demands admission under a claim of federal authority stands in a far different position. Cf. Amos v. United States, 255 U. S. 313, 317 (1921). The mere invocation of federal power by a federal law enforcement official will normally render futile any attempt to resist an unlawful entry or arrest by resort to the local police; and a claim of authority to enter is likely to unlock the door as well. See Weeks v. United States, 232 U. S. 383, 386 (1914); Amos v. United States, supra.[7] "In such cases there is no safety for the citizen, *395 except in the protection of the judicial tribunals, for rights which have been invaded by the officers of the government, professing to act in its name. There remains to him but the alternative of resistance, which may amount to crime." United States v. Lee, 106 U. S. 196, 219 (1882).[8] Nor is it adequate to answer that state law may take into account the different status of one clothed with the authority of the Federal Government. For just as state law may not authorize federal agents to violate the Fourth Amendment, Byars v. United States, supra; Weeks v. United States, supra; In re Ayers, 123 U. S. 443, 507 (1887), neither may state law undertake to limit the extent to which federal authority can be exercised. In re Neagle, 135 U. S. 1 (1890). The inevitable consequence of this dual limitation on state power is that the federal question becomes not merely a possible defense to the state law action, but an independent claim both necessary and sufficient to make out the plaintiff's cause of action. Cf. Boilermakers v. Hardeman, 401 U. S. 233, 241 (1971).
Third. That damages may be obtained for injuries consequent upon a violation of the Fourth Amendment by federal officials should hardly seem a surprising proposition. Historically, damages have been regarded as the ordinary remedy for an invasion of personal interests in liberty. See Nixon v. Condon, 286 U. S. 73 (1932); *396 Nixon v. Herndon, 273 U. S. 536, 540 (1927); Swafford v. Templeton, 185 U. S. 487 (1902); Wiley v. Sinkler, 179 U. S. 58 (1900); J. Landynski, Search and Seizure and the Supreme Court 28 et seq. (1966); N. Lasson, History and Development of the Fourth Amendment to the United States Constitution 43 et seq. (1937); Katz, The Jurisprudence of Remedies: Constitutional Legality and the Law of Torts in Bell v. Hood, 117 U. Pa. L. Rev. 1, 8-33 (1968); cf. West v. Cabell, 153 U. S. 78 (1894); Lammon v. Feusier, 111 U. S. 17 (1884). Of course, the Fourth Amendment does not in so many words provide for its enforcement by an award of money damages for the consequences of its violation. But "it is . . . well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." Bell v. Hood, 327 U. S., at 684 (footnote omitted). The present case involves no special factors counselling hesitation in the absence of affirmative action by Congress. We are not dealing with a question of "federal fiscal policy," as in United States v. Standard Oil Co., 332 U. S. 301, 311 (1947). In that case we refused to infer from the Government-soldier relationship that the United States could recover damages from one who negligently injured a soldier and thereby caused the Government to pay his medical expenses and lose his services during the course of his hospitalization. Noting that Congress was normally quite solicitous where the federal purse was involved, we pointed out that "the United States [was] the party plaintiff to the suit. And the United States has power at any time to create the liability." Id., at 316; see United States v. Gilman, 347 U. S. 507 (1954). Nor are we asked in this case to impose liability upon a congressional employee for actions contrary to no constitutional *397 prohibition,
 tional prohibition, but merely said to be in excess of the authority delegated to him by the Congress. Wheeldin v. Wheeler, 373 U. S. 647 (1963). Finally, we cannot accept respondents’ formulation of the question as whether the availability of money damages is necessary to enforce the Fourth Amendment. For we have here no explicit congressional declaration that persons injured by a federal officer’s violation of the Fourth Amendment may not recover money damages from the agents, but must instead be remitted to another remedy, equally effective in the view of Congress. The question is merely whether petitioner, if he can demonstrate an injury consequent upon the violation by' federal agents of his Fourth Amendment rights, is entitled to redress his injury through a particular remedial mechanism normally available in the federal courts. Cf. J. I. Case Co. v. Borak, 377 U. S. 426, 433 (1964); Jacobs v. United States, 290 U. S. 13, 16 (1933). “The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury.” Marbury v. Madison, 1 Cranch 137, 163 (1803). Having concluded that petitioner’s complaint states a cause of action under the Fourth Amendment, supra, at 390-395, we hold that petitioner is entitled to recover „ money damages for any injuries he has suffered as a result of the agents’ violation of the Amendment.
II
In addition to holding that petitioner’s complaint had failed to state facts making out a cause of action, the District Court ruled that in any event respondents were' immune from liability by virtue of their official position. 276 F. Supp., at 15. This question was not passed upon by the Court of Appeals, and accordingly we do not con *398 sider it here. The judgment of the Court of Appeals is reversed and the case is remanded for further proceedings consistent with this opinion.

So ordered.