Mary Ellen SONNTAG, Plaintiff-Appellant,

v.

George E. DOOLEY; Joseph A. Genna; and Roy Carlton, Defendants-Appellees.

No. 80–2435.

United States Court of Appeals, Seventh Circuit.

Heard Feb. 20, 1981.

Decided June 9, 1981.

Rehearing and Rehearing In Banc Denied Sept. 14, 1981.

---

George Gallan, Chicago, Ill., for plaintiff-appellant.

Thomas P. Sullivan, U.S. Atty., Robert T. Grueneberg, Frederick H. Branding, Asst. U.S. Attys., Chicago, Ill., for defendants-appellees.

Before FAIRCHILD, Chief Judge, and CUMMINGS and PELL, Circuit Judges.

CUMMINGS, Circuit Judge.

Plaintiff based her action on the Fifth Amendment and sought $200,000 in damages for mistreatment causing her to retire from her position as Curator of the Fort Sheridan Museum at Fort Sheridan, Illinois. Defendant Carlson was Director of Plans, Training and Security at Fort Sheridan until August 1978 and was succeeded by defendant Dooley. The third defendant is Joseph A. Genna, Chief of Plans, Operations and Training at Fort Sheridan.

The first amended complaint alleges that plaintiff founded the Fort Sheridan Museum which became "the Army's main public relations asset in the Chicago region" (1st Amended Complaint Par. 6). However, commencing in 1974, the defendants assertedly sought because of personal dislike to obtain plaintiff's resignation or retirement "by extra-legal means" since her record [1] was too distinguished to enable them to fire her after a due process hearing. The extra-legal means were:

1. Pressuring plaintiff's subordinates to provide unfavorable reports about her work performance.

2. Compelling plaintiff to accept unqualified subordinates to be used by defendants as informants about her work.

---

1. According to the complaint, plaintiff had been a career civil service employee of the United States Army for 33 years prior to her retirement. She was Curator of the Fort Sheridan Museum for the last 14 of these years.

3. Encouraging informant co-conspirator George Elisia to refuse to obey plaintiff's orders, to scream insults at her and to provide defendants with untrue reports about plaintiff's work.

4. Haranguing plaintiff at the Museum in front of her subordinates and visitors, with defendant Dooley calling her "a liar, a fraud and a thief."

5. Preparing unfavorable evaluations of plaintiff's reports.

6. Sending plaintiff notices of intent to discipline or fire her.

7. Transferring plaintiff to the unapproved position of "Senior Audio-Visual Services Clerk," with no work for her to do.

8. Threatening in 1979 to close the Museum and abolish plaintiff's job.

9. Withholding plaintiff's within-grade salary increase and timing her response thereto to occur during her hospitalization.

10. After plaintiff's hospitalization, demanding she prepare a huge number of reports impossible to complete on the dates set, maliciously reporting her absent without leave during a period of her hospitalization, and withholding her salary during her sick time.

In view of the foregoing, plaintiff charged that her health deteriorated so that in late 1979 she was compelled to follow her physician's advice to retire. Since plaintiff's long series of administrative complaints and protests from 1975 to 1980 were denied or ignored, she was forced to file this lawsuit based on defendants' constitutional torts (Count I) and Dooley's slander (Count II).

In Count I, plaintiff sought $200,000 damages plus costs and reasonable attorney's fees, and in Count II she sought a judgment solely against defendant Dooley for $200,000 in punitive damages and costs because of his false and malicious statements about her.

The district court granted defendants' motion to dismiss. Its reasoning is contained in a 6-page order reported in 495 F.Supp. 348. In the order, Judge Bua, citing *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895, correctly rejected defendants' first defense that they were absolutely immune from damage claims for plaintiff's allegedly unlawful discharge. However, he held that Count I failed to state a claim upon which relief can be granted because the complaint failed to show that plaintiff had been denied an opportunity for a fair hearing through administrative remedies and because plaintiff still had an appropriate post-resignation remedy before the Civil Service Commission [2] under *Gratehouse v. United States*, 512 F.2d 1104, 1112 (Ct.Cl.1975). In so doing, the district court especially relied upon *Bishop v. Tice*, 622 F.2d 349, 357 (8th Cir. 1980), where it was held that substantive due process damages sustained by a federal employee from a wrongful 1976 dismissal coupled with defamation "could have been recovered or adverted by resort to the Civil Service remedies created by Congress" and regulations in effect in 1976 so that it was unnecessary to give him a judicial "compensatory remedy inferred from the Constitution" under *Bivens v. Six Unknown, Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619. Since the district judge dismissed Count I, he held there was no independent jurisdiction to consider the pendent state claim for defamation contained in Count II. We reverse and remand the case for trial of both Counts.

■ As the Supreme Court explained in *Carlson v. Green*, 446 U.S. 14, 18–19, 100 S.Ct. 1468, 1472, 64 L.Ed.2d 15, a *Bivens* remedy exists for such constitutional violations as alleged here in Count I unless one of the following two exceptions exists: (1) special factors counseling hesitation in the absence of affirmative action by Congress and (2) an alternative remedy provided by Congress. Neither exception applies here.

**2.** The Civil Service Commission was abolished in 1978 and succeeded by the Office of Personnel Management and the Merit Systems Protec-
tion Board whose regulations are discussed *infra*.

There is no question that the second *Carlson* exception does not apply because Congress has not provided "an alternative remedy which it explicitly declared to be a *substitute* for recovery directly under the Constitution and viewed as equally effective" (Court's emphasis; 446 U.S. at 18–19, 100 S.Ct. at 1472). Similarly, defendants have not demonstrated "special factors counseling hesitation" under *Carlson* because they do not enjoy "such independent status in our constitutional scheme as to suggest that judicially created remedies against them might be inappropriate" and because "even if requiring them to defend [plaintiff's] suit might inhibit their efforts to perform their official duties," their qualified immunity provides adequate protection for them. *Carlson v. Green, supra* at 19, 100 S.Ct. at 1472.

■ Even assuming that the district court were correct in concluding that a *Bivens* remedy cannot be implied where alternative remedies are available,[3] there is no alternative remedy available to plaintiff here. Plaintiff's claim is that defendants deliberately bypassed the administrative procedures designed to afford her due process because they knew she could not be discharged for cause and instead undertook a systematic program to harass her into unwanted retirement. Plaintiff alleged that her administrative complaints and protests were denied or ignored, and defendants appear to concede that she was not afforded an administrative hearing (Br. 10). The administrative remedies relied upon by defendants do not cover coerced resignations. 5 C.F.R. §§ 771.101–771.119 (1979), the cited Office of Personnel Regulations,[4] do not refer to forced retirement and in-

deed expressly except "a separation action" from an agency's grievance system (5 C.F.R. § 771.108(c)). The regulations mentioned in the *Gratehouse* case, *supra*, (5 C.F.R. Parts 752 and 772 (1972)), which defendants cite to show that plaintiff had an available post-resignation remedy, were superseded by 5 C.F.R. Parts 752 and 771 (1979) at the time of plaintiff's retirement. Part 752 applies only to suspensions or removals (5 C.F.R. § 752.01), and Part 771, as just noted, is also inapplicable. Moreover, even if these provisions were applicable the only relief they afford is reinstatement and back pay. But plaintiff, because defendants allegedly destroyed her health, is now unable to work and seeks damages, not reinstatement.

Finally, *Bishop v. Tice, supra*, does not support dismissal of plaintiff's claim. First, the Congressional remedies and regulations relied on in *Bishop* dealt with discharges and not forced retirements. Second, both the majority and the dissent in *Bishop* agreed that if the plaintiff there could prove that his failure to exhaust administrative remedies had been due, as alleged, to defendants' misconduct, he would have an actionable procedural due process claim such as that advanced by plaintiff here. See 622 F.2d at 357–358.

Since the regulations afforded plaintiff no pre- or post-termination hearing or other procedural protection,[5] a *Bivens* remedy must be implied under *Carlson v. Green, supra.*

■ As previously noted, Count II seeks punitive damages from defendant Dooley because of his maliciously making false and slanderous statements about plaintiff in the presence of her subordinates and museum

---

**3.** In *Bush v. Lucas*, 598 F.2d 958 (5th Cir. 1979), the court did not imply a *Bivens* remedy because plaintiff could appeal his demotion to the Civil Service Commission. However, that decision was vacated and remanded for reconsideration in light of *Carlson v. Green*. See 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15.

**4.** The Office of Personnel Management was assigned some of the functions of the former Civil Service Commission on January 1, 1979. See 5 U.S.C. § 1101.

**5.** The Merit Systems Protection Board was assigned some of the functions of the Civil Service Commission effective January 13, 1979. See 5 U.S.C. § 1201. Defendants cite no regulations of that agency as affording plaintiff an administrative remedy, doubtless because its regulations do not deal with coerced resignations. See 5 C.F.R. §§ 1201 *et seq.* (1979).

visitors. Judge Bua dismissed this pendent count on the ground that he had "no independent jurisdiction to consider the state law claim of defamation contained in Count II." Since we have held that Count I should not have been dismissed, it follows that pendent Count II was improperly dismissed. While in his brief defendant Dooley asserts the defense of absolute immunity in response to Count II, that defense is applicable only if he can show that he was "a policy-making executive official" making "a public statement of a general policy in respect to matters of wide public interest and concern" and that his statements were "within the outer perimeter of * * * [his] line of duty" (*Barr v. Matteo*, 360 U.S. 564, 575, 79 S.Ct. 1335, 1341, 3 L.Ed.2d 1434). Therefore a trial of Count II is necessary.

Reversed and remanded for trial.[6]

---

6. Circuit Rule 18 shall apply.