**Claude GILLAM, Plaintiff,**

v.

**Richard L. ROUDEBUSH, et al., Defendants.**

**No. 81 C 626.**

United States District Court, N. D. Illinois, E. D.

May 26, 1982.

Claude Gillam, pro se.

Linda A. Wawzenski, Asst. U. S. Atty., Chicago, Ill., for defendants.

MEMORANDUM OPINION AND ORDER

DECKER, District Judge.

Plaintiff Claude Gillam filed this action against defendants Richard Roudebush, Odell Vaughn, Rufus Wilson, John Hagan, and Paul Mahoney, alleging violations of his constitutional rights. Each of the defendants was or is a federal official. On June 11, 1981, the court entered a memorandum opinion and order, holding that defendants had to be sued in their individual capacities, and requiring plaintiff to obtain personal service over each of them. Plaintiff has succeeded in personally serving most, if not all, of the defendants. Pending are motions from all defendants to dismiss plaintiff's complaint. The alleged grounds for dismissal are the same in all the motions, and so they will be discussed as a group rather than individually.

*Factual Background*

This case involves plaintiff's tenure as Director of the Chicago Regional Office of the United States Veterans Administration ("USVA") and his discharge from that position. Four of the five defendants in this case were in the "chain of command" in the USVA and held positions above that of Gillam during the relevant time period of this case. Richard Roudebush was the Ad-

ministrator of Veterans Affairs and, in that capacity, was the chief executive officer of the USVA. Odell Vaughn was the Deputy Administrator of Veterans Affairs and was the second ranking officer in the USVA. Rufus Wilson was the Chief Benefits Director of the USVA and supervised the Department of Veterans Benefits of which the Chicago Regional Office was a part. John Hagan was the Field Director for Area 3 of the Department of Veterans Benefits. In that position, Hagan was plaintiff Gillam's immediate supervisor. The fifth defendant, Paul Mahoney, was the Director of the Federal Employee Appeals Authority of the United States Civil Service Commission, which has since been renamed by the Civil Service Reform Act of 1978 as the Office of Appeals Operation of the Merit Systems Protection Board.

In August 1974, Gillam became Director of the Chicago Regional Office. Prior to the time plaintiff assumed his new position, a black female employee of the Chicago Regional Office had filed a complaint charging discrimination and reprisals for the filing of earlier complaints. On November 29, 1974, the General Counsel of the Veterans Administration issued a decision which held that the employee had in fact been subject to reprisals and which ordered that certain corrective actions be taken. As Director, plaintiff was responsible for implementing the General Counsel's order.

Plaintiff immediately questioned the validity of the General Counsel's order, in particular the propriety of the corrective action that was ordered. There followed an exchange of numerous letters, several telephone conversations, and conferences between Gillam and his superiors, particularly defendants Hagan and Wilson, concerning the order. Plaintiff Gillam held to his position that the order could not be implemented because it would require an unlawful personnel action. Hagan and Wilson both maintained that the order was proper and legal, because it was issued by the highest legal authority in the Veterans Administration, and so continued to order plaintiff to carry it out. Finally, on January 20, 1976, Wilson wrote to Gillam ordering him to implement the order and notify him (Wilson) by teletype on Monday, February 2, 1976, of Gillam's compliance with that order.

Apparently, Mr. Gillam did not respond to the January 20 letter as requested. In a phone conversation with Hagan on February 2, Gillam again refused to take the action requested in the January 20 letter. As a result, Wilson issued to Gillam a notice of proposed removal for insubordination and failure to conform to Civil Service regulations. The notice was dated February 10, 1976. On March 30, 1976, after considering Gillam's reply to the notice, the Administrator of Veterans Affairs, defendant Roudebush, issued a decision to remove Gillam, which became effective on April 6, 1976.

Meanwhile, on January 30, 1976, Gillam filed an informal grievance, in which he restated his position that the General Counsel had exceeded his authority in ordering corrective actions for the reprisals against the black employee, and that the order could not be used as justification for effecting an illegal personnel action. In accordance with the grievance procedure, Gillam received an oral reply to his informal grievance on February 12, 1976. According to the procedures, an employee is required to file a formal grievance within ten days after receiving the informal reply, if he so desires. On February 19, 1976, Gillam requested an extension of time in which to file a formal grievance. Defendant Wilson granted an extension until March 15, 1976. On March 12, Gillam requested a further extension of time. On this occasion, the Deputy Administrator of the Veterans Administration, defendant Vaughn, responded and denied Gillam's request for more time. When asked to reconsider his decision, Vaughn informed Gillam that the decision on the matter was final.

On April 2, 1976, Gillam appealed his removal to the Chicago Field Office of the Civil Service Commission's Federal Employee Appeals Authority ("FEAA"). After a hearing, the FEAA issued its decision on

March 25, 1977, holding that Gillam was guilty of refusing to carry out a proper order of a superior. However, plaintiff alleges that the appeals officer, who held the hearing on Gillam's appeal, initially drafted a decision finding that Gillam's removal was improper. Gillam contends that the draft decision was changed to a final decision reaching the opposite conclusion because of pressure put on the appeals officer by defendant Mahoney, the Director of the FEAA. Gillam does not suggest what Mahoney's motives for his actions were.

Gillam appealed the unfavorable final decision of the FEAA to the Appeals Review Board of the Civil Service Commission. The Review Board, now known as the Office of Appeals Review, Merit Systems Protection Board, decided to reopen Gillam's case. On April 18, 1979, it issued its decision, reversing the FEAA, and ordering that Gillam be restored retroactively to the position from which he was removed or to one of equal grade and rank. Gillam also received back pay for the time that he was removed from his position. As grounds for its decision, the Review Board stated that the interference by defendant Mahoney, resulting in the hearing officer changing his original decision, was a violation of due process significant enough to justify vacating the FEAA decision and remanding the case for a new hearing. However, the Review Board concluded that that was not a practical solution, due to the lapse of time and the difficulties that would be encountered in again finding the necessary witnesses. Therefore, the Review Board considered the extensive record before it from the earlier hearing, and concluded, for various reasons, that Gillam's removal had been improper.

In his current complaint, plaintiff alleges that the actions taken by defendants Hagan, Wilson, Vaughn, and Roudebush were done as part of a conspiracy to violate Gillam's First Amendment right to free speech. Specifically, Gillam claims he was removed from his position as Director of the Chicago Regional Office in retaliation for filing a grievance against the General Counsel's order. In addition, plaintiff alleges that the defendants violated his Fifth Amendment right not to be deprived of his employment without due process of law. Finally, plaintiff claims that defendant Mahoney's interference in the administrative review process before the FEAA constituted a violation of plaintiff's Fifth Amendment right to a hearing concerning his discharge. Plaintiff requests actual damages in the amount of $104,000 and punitive damages of $50,000 against the USVA defendants, and actual damages of $101,000 and punitive damages of $15,000 against defendant Mahoney.

### Discussion

Plaintiff has sued for damages in this case directly under the First and Fifth Amendments. Such suits were first allowed in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), where the Supreme Court inferred a private right of action against federal officers who had violated the plaintiff's Fourth Amendment rights. The narrow cause of action established by the Court in *Bivens* was most recently discussed and expanded in *Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980). In *Carlson,* the Court held that plaintiff could maintain a *Bivens*-type suit for damages against federal prison officials, who allegedly violated plaintiff's decedent's Eighth Amendment rights, even though plaintiff also could have sued the government under the Tort Claims Act. The Court stated that *Bivens* created a parallel remedy for constitutional violations that could only be defeated in two situations:

"The first is when defendants demonstrate 'special factors counselling hesitation in the absence of affirmative action by Congress.' 403 U.S., at 396, 91 S.Ct. at 2004; *Davis v. Passman,* 442 U.S. 228, 245, 99 S.Ct. 2264, 2277, 60 L.Ed.2d 846 (1979). The second is when defendants show that Congress has provided an alternative remedy which it explicitly declared to be a *substitute* for recovery directly under the Constitution and viewed as

equally effective. *Bivens, supra,* at 397, 91 S.Ct. at 2005; *Davis v. Passman,* 442 U.S., at 245–47, 99 S.Ct. at 2277."
*Carlson, supra,* 446 U.S. at 18–19, 100 S.Ct. at 1472.

In their motions to dismiss, defendants apparently agree that the second situation identified by the Supreme Court does not apply in this case. However, defendants argue that the first situation is applicable to this case—that special factors do exist here which counsel hesitation in applying a *Bivens*-type remedy to Gillam's allegations. In *Carlson,* the Court gave little guidance concerning what "special factors" would justify withholding a *Bivens* remedy from plaintiffs who alleged that their constitutional rights had been violated. Fortunately, however, this court is not writing on a blank slate in this area. The same question that defendants here have raised was considered by the Fifth Circuit Court of Appeals in *Bush v. Lucas,* 647 F.2d 573 (5th Cir. 1981).

The facts in *Bush* were remarkably similar to those presently before this court. Plaintiff, William C. Bush, had been a civil service employee for many years. In a public interview, Bush sharply criticized his job, saying that he was not productively employed. Bush's statements were widely disseminated and appeared in several newspapers. Several months after Bush made the statements in the interview, a personnel action was initiated which resulted in Bush's reduction in grade from GS–14 to GS–12. Bush appealed the reduction in grade to the Civil Service Commission, which initially sustained the grade reduction.

Immediately after failing in his first administrative attempt to be returned to his previous grade level, Bush filed an action in state court, which the defendant removed to federal district court. Bush alleged, *inter alia,* that he was demoted in retaliation for his exercise of his First Amendment right of free speech. The district court dismissed Bush's claims, holding that the availability of administrative remedies to challenge the adverse personnel decision precluded a damages remedy based on *Bivens.* Bush appealed that decision, and the Fifth Circuit initially accepted the reasoning of the district court and affirmed. 598 F.2d 958 (5th Cir. 1979). In addition, the Court of Appeals noted that Bush had continued to pursue his administrative remedies while his court case was going forward, and he had been restored to his original status and awarded back pay.

The Supreme Court granted certiorari and vacated and remanded the case for further consideration in light of. *Carlson,* which the Court had just decided. 446 U.S. 914, 100 S.Ct. 1846, 64 L.Ed.2d 268 (1980). On remand, the Court of Appeals considered whether or not special factors existed which would preclude his receiving damages for the alleged First Amendment violations. The court concluded that there were, as follows:

"Defendant persuasively argues, however, that in this case the unique relationship between the Federal Government and its civil service employees is a special consideration which counsels hesitation in inferring a *Bivens* remedy in the absence of affirmative congressional action. The role of the Government as an employer toward its employees is fundamentally different from its role as sovereign over private citizens generally. This distinction has been recognized in numerous Supreme Court cases."

*Bush,* 647 F.2d at 576. The court also discussed at length the importance of the system of administrative remedies that Congress has formulated to deal with the problems that arise in the federal employment context.

"This special relationship affects not only the substantive rights of public employees, but also the way in which an aggrieved employee can assert and redress his rights in the employment context. Consistent with the notion that the Government should have wide latitude and control over its employees, Congress, rather than the courts, has traditionally carried the burden of regulating the Government employer-employee relationship."

.　　　.　　　.　　　.　　　.

"We stress the remedies made available by Congress to an aggrieved civil servant in order to emphasize the care Congress haś taken to carefully balance the employee's rights as a citizen with the Government's interest in the efficient conduct of the nation's business. The very comprehensiveness of the legislative and administrative scheme evinces Congress' awareness of the special relationship and of the Government's responsibilities toward its civil service employees.

"The employer-employee context of this case serves to distinguish it from suits such as *Bivens* and *Carlson* which involved plaintiffs as private citizens seeking damages against agents of the Government acting in its sovereign capacity. Inferring a *Bivens* remedy in this case would tend to interfere with and undermine the traditional control of the Government over its internal and personnel affairs. It might encourage aggrieved employees to bypass the statutory and administrative remedies in order to seek direct judicial relief and thereby deprive the Government of the opportunity to work out its personnel problems within the framework it has so painstakingly established. Ultimately, it would provide a disincentive for Congress to continue improving the mechanisms by which an aggrieved employee can protect his rights."

.    .    .    .    .

"While the result in this case might be different if failure to recognize a *Bivens* remedy would leave Bush ... without any remedy, this of course is not the case."

*Id.* at 576–577. *See also Bishop v. Tice,* 622 F.2d 349 (8th Cir. 1980) (recognizing the distinction between claims of federal employees for which remedies are available and employee claims which are not cognizable under the administrative process).

This court finds the reasoning in *Bush* very persuasive. The dangers of allowing a *Bivens* remedy in addition to the administrative remedies are amply demonstrated by this case. Gillam has already received one lengthy hearing on his charges at the FEAA level. In addition, he has received a favorable ruling after appeal, resulting in reinstatement and back pay awards. Had Gillam lost the initial appeal, he could have requested the federal court to review his case. Allowing Gillam to bring an additional action in federal court would only serve to further complicate and extend an already protracted system of hearing and appeals. Also, there would be a strong possibility of conflicting and inconsistent results arising out of the administrative process and the court suit. Those considerations, in addition to those identified by the court in *Bush,* counsel against allowing Gillam to pursue a *Bivens* suit.

In an attempt to counter the reasoning in *Bush,* plaintiff argues that the Seventh Circuit case of *Sonntag v. Dooley,* 650 F.2d 904 (7th Cir. 1981), requires this court to allow him to pursue a damage suit under *Bivens.* Plaintiff's argument, however, is based on an incorrect reading of *Sonntag.* In *Sonntag,* the plaintiff alleged that she had been coerced into retiring from her federal employment, in violation of her Fifth Amendment rights. The Court of Appeals found that those allegations were sufficient to state a cause of action under *Bivens.* In so ruling, the court particularly emphasized that the plaintiff did not have an administrative remedy available that would allow her complaints to be heard. The court stated:

"Since the regulations afforded plaintiff *no pre- or post-termination hearing* or other procedural protection, a *Bivens* remedy must be implied under *Carlson v. Green, supra.*"

*Sonntag,* 650 F.2d at 907 (emphasis added). Gillam's complaint amply demonstrates that administrative remedies were available for the alleged constitutional violations. Therefore, the court's ruling in *Sonntag* is simply irrelevant to the facts of the instant case.

Plaintiff also claims that the actions of defendant Mahoney interfered with Gillam's exercise of his administrative remedies, to the extent that the remedies were

effectively denied. Consequently, Gillam suggests that a *Bivens* remedy is required based on the facts of this case. Gillam's allegations themselves belie that contention. Gillam has stated that he was not only able to pursue a final administrative determination of his case, but that he was ultimately successful in getting his discharge overturned. Rather than this being a case where administrative remedies were denied to the plaintiff, this is a case where the administrative remedies fulfilled their purpose of protecting an employee's rights. *See Bishop, supra.*

In conclusion, the court finds that Gillam has failed to state a cause of action under federal law. In his complaint, Gillam alleges that the court has diversity jurisdiction over this case, in addition to federal question jurisdiction. However, plaintiff has failed to allege any causes of action based on the law of Illinois. Therefore, this case may be dismissed in its entirety.

For the reasons stated above, defendants' motions to dismiss are granted. This action is hereby ordered dismissed.