Edward BENEDETTO, Plaintiff,

v.

NATIONAL ASSOCIATION OF LETTER CARRIERS, AFL–CIO, BRANCH 608, the United States Postal Service, and R.H. Pusateri, Individually and as Agent of the United States Postal Service, Defendants.

No. 81 C 4550.

United States District Court,
N.D. Illinois, E.D.

May 23, 1984.

David F. Addleton, Abrams, Gomberg & Reese, Ltd., Chicago, Ill., for plaintiff.

Dan K. Webb, U.S. Atty., Steven A. Miller, Asst. U.S. Atty., Chicago, Ill. (Dorothy Lupton Moran, Asst. Regional Labor Counsel, U.S. Postal Service, Chicago, Ill., of counsel), for defendants.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

Edward Benedetto ("Plaintiff") brings this action against the National Association of Letter Carriers, AFL–CIO, Branch 608 (the "Union"), the United States Postal Service (the "U.S.P.S."), and R.H. Pusateri ("Pusateri"), seeking various forms of relief for alleged injuries arising from Plaintiff's employment by the U.S.P.S. Jurisdiction is apparently based on 29 U.S.C. § 185 and 28 U.S.C. § 1331. Presently before the court is Pusateri's motion, under Fed.R. Civ.P. Rule 12(b)(6), to dismiss what is, in effect, Count III of Plaintiff's first amended complaint ("complaint")[1] for failure to state a claim upon which relief can be

---

1. What Plaintiff refers to as his "Third Claim for Relief," we refer to as "Count III" of his complaint.

granted.[2] For the reasons set forth below, Pusateri's motion is granted.

### Factual Background

For purposes of Pusateri's motion, we must, of course, accept as true the well-pleaded factual allegations of Plaintiff's complaint. *E.g., Reichenberger v. Pritchard,* 660 F.2d 280, 282 (7th Cir.1981). Further, we must view the reasonable inferences to be drawn from those allegations in the light most favorable to Plaintiff. *E.g., Powe v. City of Chicago,* 664 F.2d 639, 642 (7th Cir.1981). The complaint discloses that Plaintiff was employed as a letter carrier by the U.S.P.S. until he was discharged in November 1981, and that he was at all relevant times a member of the Union. Pusateri was also at all relevant times an employee of the U.S.P.S. and was in a supervisory position with respect to Plaintiff.

Plaintiff alleges that, during the course of his employment, the U.S.P.S. wrongfully imposed various disciplinary sanctions on Plaintiff, and ultimately wrongfully discharged him, and that the Union breached its duty of fair representation to Plaintiff in its handling of at least two of his grievances against the U.S.P.S. Plaintiff avers that Pusateri improperly initiated approximately five disciplinary actions against Plaintiff between August 1975 and November 1981, and that Pusateri directly or indirectly caused Plaintiff to be discharged by the U.S.P.S. In Count III of his complaint, Plaintiff seeks to recover compensatory damages from Pusateri for his alleged "intentional infliction of emotional distress and tortious interference with business relations." (Complaint, ¶ 1.)

### Discussion

At first glance, Count III of Plaintiff's complaint would seem to present straightforward state law tort claims against Pusateri. Indeed, earlier in his complaint, Plaintiff invokes the court's pendent jurisdiction. (Complaint, ¶ 3.) On this "simplistic" reading of Count III, the issue before us would be that of whether Pusateri, as a federal official, is immune from suit. *See Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). Appearances, however, are often misleading. The problem in this case is posed by the fact that our first duty is, as always, to investigate the propriety of our exercising jurisdiction. Count III of Plaintiff's complaint, if viewed as presenting state law claims, has no independent jurisdictional basis. Thus, as Plaintiff seems to recognize (albeit not explicitly), Count III, so viewed, would have to be dismissed, since our exercising pendent party jurisdiction in that situation would clearly be improper. *See Hixon v. Sherwin-Williams Co.,* 671 F.2d 1005, 1008 (7th Cir.1982); *Hampton v. City of Chicago,* 484 F.2d 602, 611 (7th Cir.1973), *cert. denied,* 415 U.S. 917, 94 S.Ct. 1413, 39 L.Ed.2d 471 (1974).

In an attempt to avoid that result (we surmise), Plaintiff urges us to find that Count III presents claims "arising under the ... laws ... of the United States," within the meaning of 28 U.S.C. § 1331. In other words, Plaintiff would have us "create," in the context of federal employment decisions, a federal common law of "intentional infliction of emotional distress and tortious interference with business relations." Antecedent to the immunity issue, therefore, is the question of whether Count III states federal claims, for if "it appears beyond doubt that ... [P]laintiff can prove no set of facts in support of his claim[s] which would entitle him to relief," *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957) (footnote omitted), we cannot properly exercise jurisdiction over Count III. As a result, this seemingly straightforward motion becomes one forcing us to confront some

---

**2.** Although Pusateri has submitted an affidavit in support of his motion to dismiss, we have excluded it, and our decision is based only on the allegations of Plaintiff's complaint. *See* Fed.R.Civ.P. Rule 12(b). In addition, we note that Pusateri has withdrawn his motion to dismiss Plaintiff's complaint, under Fed.R.Civ.P. Rule 12(b)(2), for lack of jurisdiction over the person.

fundamental problems of American jurisprudence.

We begin by noting that Plaintiff incorrectly characterizes what he asks us to recognize in Count III of his complaint as a "*Bivens*-type action." In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397, 91 S.Ct. 1999, 2005, 29 L.Ed.2d 619 (1971), the Supreme Court held that a claim for damages could be founded directly on the Fourth Amendment to the Constitution. In the present case, however, Plaintiff does not purport to base Count III on the Constitution. More fundamentally, in *Bivens* and its progeny, a violation of the Constitution (and thus of federal law) is assumed to have occurred, and the issue is that of whether a suit for damages is available to the plaintiff as a remedy. In the present case, on the other hand, Plaintiff, who we assume has in some sense been injured, in urging us to allow a damages action as a remedy, is in effect asking us to recognize (for the first time) the existence of certain federal rights. The power of a federal court to provide remedies for established constitutional violations is far greater than its power to fashion federal common law. *See, e.g., United States v. Standard Oil Co. of California*, 332 U.S. 301, 313, 67 S.Ct. 1604, 1611, 91 L.Ed. 2067 (1947). In short, we believe that those decisions which have permitted direct actions for damages under the Constitution are inapposite.

That conclusion, however, does not imply that those decisions which have refused to allow damages actions for alleged violations of constitutional rights are irrelevant to the present case. Indeed, Pusateri relies almost exclusively on such a case, *Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983). In *Bush*, the Supreme Court declined "to permit a federal employee to recover damages from a supervisor who has improperly disciplined him for exercising his First Amendment rights." 103 S.Ct. at 2417. The Court based its decision on its conclusion that, because the plaintiff (like Plaintiff in the present case) was a civil servant, his "claims arise out of an employment relationship that is governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States." 103 S.Ct. at 2406.

We agree with Pusateri's position to the extent that, were we to find that *Bush* is essentially indistinguishable from the present case except for the nature of the wrong alleged, we would hardly be prepared to create a new damages remedy for allegedly tortious conduct under circumstances which led the Supreme Court to refuse to create a similar remedy for an alleged violation of constitutional rights. Plaintiff contends, however, that *Bush* is distinguishable. In particular, Plaintiff argues that he had no meaningful administrative remedy for at least two of the disciplinary actions against him which were allegedly wrongfully initiated by Pusateri, because they resulted in suspensions for fourteen days or less. As the Supreme Court itself pointed out in *Bush*, "[n]ot all personnel actions are covered by this [civil service] system. For example, there are no provisions for appeal of ... suspensions for 14 days or less, 5 U.S.C. § 7503 (Supp. V 1981)." 103 S.Ct. at 2415 n. 28. We believe that, at least in the context of a motion to dismiss, Plaintiff has proffered a significant distinction between *Bush* and the present case. Because, under the circumstances presented by this case, the civil service system may not have afforded Plaintiff "a remedy that is substantially as effective as a damage action," *Bush v. Lucas*, 103 S.Ct. at 2418 (Marshall, J., concurring), we decline to find that *Bush* controls our decision in the present case. *See Sonntag v. Dooley*, 650 F.2d 904, 907 (7th Cir. 1981).

■ Since we lack controlling precedent, we must return to first principles, beginning with the venerable proposition that "[t]here is no federal general common law." *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). That we cannot fashion *general* common law, though, does not mean that we do not, in some situations, have the

powers of a common law court. When the subject matter of a case is sufficiently federal in character, a federal court can, in the absence of an applicable statute, create federal common law. *See Clearfield Trust Co. v. United States,* 318 U.S. 363, 366–67, 63 S.Ct. 573, 574–75, 87 L.Ed. 838 (1943). Because "the scope, nature, legal incidents and consequences of the [federal employment] relation between ... [Plaintiff and the U.S.P.S.] are fundamentally derived from federal sources and governed by federal authority," *United States v. Standard Oil Co. of California,* 332 U.S. at 305–06, 67 S.Ct. at 1606–07, this may well be such a case. At any rate, we assume, for purposes of our decision, that this is a case in which we have the power to create new federal common law torts.

 Given that assumption, we nevertheless believe that doing so would clearly be improper. The reason is simple and, at this point, probably anticlimactic. This is a case in which "state law ... furnish[es] convenient solutions in no way inconsistent with adequate protection of the federal interest," *United States v. Standard Oil Co. of California,* 332 U.S. at 309, 67 S.Ct. at 1609, and, we would add, in no way inconsistent with adequate protection of Plaintiff's interests. We can find no reason to create federal common law remedies for "intentional infliction of emotional distress and tortious interference with business relations" when Plaintiff, and those similarly situated, already have equivalent tort remedies under the laws of the various states. We fail to see what advantage Plaintiff would gain (other than the one mentioned below) by proceeding under federal law rather than state law. In particular, we note that Pusateri's immunity defense would apply as much to federal tort claims as to state tort claims. *See, e.g., Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. at 397–98, 91 S.Ct. at 2005–06. The only rationale which we can imagine for Plaintiff's ardent efforts to persuade us to recognize new federal common law torts is that Plaintiff is attempting to create federal jurisdiction where it would not otherwise exist, and

that is an endeavor in which we have no intention of assisting him. We are thus back at our original, straightforward reading of Count III of Plaintiff's complaint, from which we probably should not have departed in the first place.

### Conclusion

For the reasons stated above, Pusateri's motion to dismiss Count III of Plaintiff's complaint is granted. Accordingly, Pusateri is hereby dismissed as a defendant in this case.