KAVANAUGH, Circuit Judge,
concurring:
The United States is at war against al Qaeda and other radical Islamic terrorist organizations. Shortly after al Qaeda’s attacks on the United States on September 11, 2001, Congress authorized this war. President Bush and President Obama have aggressively commanded the U.S. war effort.
The terrorists’ stated goals are, among other things, to destroy the State of Israel, to drive the United States from its posts in the Middle East, to replace more moderate Islamic leadership in nations such as Saudi Arabia, and to usher in radical Islamic control throughout the Greater Middle East. In pursuing their objectives, the terrorists have repeatedly attacked U.S. persons and property, both in foreign countries and in the U.S homeland.
The war continues. No end is in sight.
In waging this war, the United States has wielded a wide array of federal assets, including the military, the CIA, the FBI, and other U.S. intelligence and law enforcement agencies. The traditional walls dividing military, intelligence, and law enforcement operations have given way to a more integrated war effort. As President Bush and President Obama have explained, the United States employs military, intelligence, and law enforcement personnel in an often unified effort to detect, surveil, capture, kill, detain, interrogate, and prosecute the enemy.
In this case, U.S. law enforcement officers detained and interrogated Meshal in a foreign country. They suspected that Meshal might be an al Qaeda terrorist. Meshal alleges that he was mistakenly detained and then abused. He has brought a tort suit against the individual officers under Bivens, and he seeks damages presumably in the hundreds of thousands of dollars from those officers in their individual capacities.
The Bivens doctrine allows parties to maintain certain constitutional tort suits against federal officers in their individual capacities, even in the absence of an express congressionally created cause of action. The classic Bivens case entails a suit alleging an unreasonable search or seizure by a federal officer in violation of the Fourth Amendment. See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Since Bivens, however, the Supreme Court has been reluctant to extend the implied Bivens cause of action to new contexts. The Court has emphasized that it is ordinarily Congress’s role, not the Judiciary’s, to create and define the scope of federal tort remedies. As the Court has explained, Bivens carved out only a narrow exception *430 to that bedrock separation of powers principle.
Here, Meshal proceeded under Bivens because Congress has not created a cause of action for his alleged injury. As the Court today spells out, Congress has enacted a number of related tort causes of action. For example, the Federal Tort Claims Act provides a cause of action for torts committed by federal officials. But that law exempts torts committed in a foreign country. So it does not help Meshal. The Torture Victim Protection Act provides a cause of action for torture committed by foreign officials. But the statute exempts U.S. officials, a point that President George H.W. Bush stressed when signing the legislation in 1992. See 28 U.S.C. §§ 2671 et seq.; id. § 1350 Note; see also Statement on Signing the Torture Victim Protection Act of 1991, 1 Pub. Papers 437-38 (Mar. 12, 1992). So that law likewise does not help Meshal. The bottom line is that neither of those statutes, nor any other, creates a cause of action against U.S. officials for torts committed abroad in these circumstances. See 28 U.S.C. § 2680(k); id. § 1350 Note, § 2(a).
Lacking any statutory cause of action, Meshal has sued under Bivens. The Department of Justice, speaking ultimately as the representative of President Obama, has vigorously argued that the implied Bivens cause of action cannot be stretched to cover Meshal’s case. According to the Department of Justice, Bivens does not apply here because the alleged conduct occurred during a national security investigation in a foreign country, a setting different in multiple important respects from the heartland Bivens case. Faithfully following existing Supreme Court precedent, Judge Emmet Sullivan agreed with the Department of Justice and dismissed Meshal’s suit. The Court today affirms, and I fully join its thorough and well-reasoned opinion.
I add this concurrence to underscore a few points in response to the dissent.
The fundamental divide between the majority opinion and the dissent arises over a seemingly simple question: Who Decides? In particular, who decides whether to recognize a cause of action against U.S. officials for torts they allegedly committed abroad in connection with the war against al Qaeda and other radical -Islamic terrorist organizations? In my view, the answer is Congress, not the Judiciary.
In confining the coverage of statutes such as the Federal Tort Claims Act and the Torture Victim Protection Act, Congress has deliberately decided not to fashion a cause of action for tort cases like Meshal’s. Given the absence of an express cause of action, the dissent seizes upon Bivens. How does the dissent deal with the Supreme Court’s oft-repeated caution against extending Bivens to new contexts? The dissent argues that this case does not present a new context.
On that point, I respectfully but strongly disagree with the dissent. Most importantly, the alleged conduct in this case occurred abroad. So far as the parties have been able to uncover, never before has a federal court recognized a Bivens action for conduct by U.S. officials abroad. Never. In statutory cases, we employ a presumption against extraterritoriality. There is no persuasive reason to adopt a laxer extraterritoriality rule in Bivens cases. It would be grossly anomalous, in my view, to apply Bivens extraterritorially when we would not apply an identical statutory cause of action for constitutional torts extraterritorially. Cf. Kiobel v. Royal Dutch Petroleum Co., — U.S. -, 133 S.Ct. 1659, 1664, 185 L.Ed.2d 671 (2013); Morrison v. National Australia *431 Bank Limited, 561 U.S. 247, 255, 130 S.Ct. 2869, 177 L.Ed.2d 535 (2010).
This case is far from the Bivens heartland for another reason as well. It involves a national security investigation during a congressionally authorized war, not a simple arrest for securities fraud, drug trafficking, or the like. Other courts of appeals have refused to recognize Bivens actions for alleged conduct that occurred during national security investigations, even for conduct that occurred in U.S. territory. See Lebron v. Rumsfeld, 670 F.3d 540 (4th Cir.2012); Arar v, Ashcroft, 585 F.3d 559 (2d Cir.2009); see also Vance v. Rumsfeld, 701 F.3d 193 (7th Cir.2012). We should do the same in this case, especially because the conduct here occurred in a foreign country. The dissent responds that the Government has not demonstrated that this case is national-security-related. But U.S. officials were attempting to seize and interrogate suspected al Qaeda terrorists in a foreign country during wartime. If this case is not national-security-related, it is hard to see what is. The dissent counters that the U.S. had not designated Meshal as an enemy combatant. But that misses the key point: The U.S. was conducting an investigation to determine whether Meshal was an enemy combatant. In this war, the U.S. seeks to proactively confront terrorist threats before they fully materialize. Close calls may arise in labeling an investigation as national-security-related. Not here.
The confluence of those two factors— extraterritoriality and national security— renders this an especially inappropriate case for a court to supplant Congress and the President by erecting new limits on the U.S. war effort. Make no mistake. If we were to recognize a Bivens action in this case, U.S. officials undoubtedly would be more hesitant in investigating and interrogating suspected al Qaeda members abroad. Of course, some might argue that would be a good thing. Maybe so, maybe not. Either way, it is not our decision to make. Congress and the President possess the authority to restrict the actions of U.S. officials during wartime, including by approving new tort causes of action. And in this war, they have done so by enacting new statutes such as the Detainee Treatment Act and the Military Commissions Act. But they have not created a tort cause of action for this kind of case. In my view, we would disrespect Congress and the President, and disregard our proper role as judges, if we were to recognize a Bivens cause of action here.
In justiciable cases, courts should not hesitate to enforce constitutional and statutory constraints on wartime activities. See Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 72 S.Ct. 863, 96 L.Ed. 1153 (1952); Hamdan v. United States, 696 F.3d 1238 (D.C.Cir.2012) (Kavanaugh, J.). But courts should not — under the guise of Bivens — unilaterally recognize new limits that restrict U.S. officers’ wartime activities. As Justice Jackson stated in his canonical concurrence in Youngstown, courts “should indulge the widest latitude of interpretation to sustain” the President’s command of “the instruments of national force, at least when turned against the outside world for the security of our society.” 343 U.S. at 645, 72 S.Ct. 863 (Jackson, J., concurring). If I were a Member of Congress, I might vote to enact a new tort cause of action to cover a case like Meshal’s. But as. judges, we do not get to make that decision. For those reasons, I respectfully disagree with the dissent and fully join the Court’s opinion.