Jose Luis **COLON ROMAN, et al.,**
**Plaintiffs, Appellants,**

v.

**UNITED STATES of America, et al.,**
**Defendants, Appellees.**

No. 86–1546.

United States Court of Appeals,
First Circuit.

Argued Feb. 5, 1987.

Decided April 29, 1987.

Robert J. Walser, San Juan, P.R., for plaintiffs, appellants.

Wanda Rubianes-Collazo, Asst. U.S. Atty., with whom Daniel F. Lopez Romo, U.S. Atty., Hato Rey, P.R., was on brief, for defendants, appellees.

Before COFFIN, BOWNES and TORRUELLA, Circuit Judges.

COFFIN, Circuit Judge.

This is an appeal from a dismissal by the district court, after trial, of an ancient and much amended complaint brought by Jose Luis Colon Roman and his then wife Miriam Alcina Cartagena, buyers of residential property, and their children against certain Farmers' Home Administration (FmHA) officials for allegedly wrongfully taking their property.

Claims were asserted under the Federal Tort Claims Act, 28 U.S.C. § 1346; under the civil rights conspiracy statute, 42 U.S.C. § 1985; and under the *Bivens* analogue of 42 U.S.C. § 1983, *Bivens v. Six Unknown Named Agents of Fed. Bur. of Narc.*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

We have been sorely handicapped in deciding this case by plaintiffs' delay, which we have tolerated, in furnishing a transcript, and by our continuing difficulty in understanding plaintiffs' brief and oral arguments, which seemed often to assume as fact testimony that the court specifically discredited. This included the testimony of one of the plaintiffs, the other being found unable to testify competently.

On June 11, 1979, plaintiffs paid $5,000 to Victor Fernandez Rivera and his wife Rosa M. Rodriguez Rivera for a house in Humacao, on which the Farmers' Home Administration held a substantial mortgage. No deed was executed at this time, the seller apparently not able or willing to pay for the services of a lawyer. On the same day plaintiffs applied to be substituted for the Fernandez couple as the mortgagors. Two months earlier, plaintiffs' home in Cayey had burned; by October it had been repaired, the work being financed from insurance proceeds. Although the Fernandez mortgage was one which was

available only to "a person who does not own an adequate dwelling and who will become the owner and will permanently occupy the dwelling," 7 C.F.R. § 1822.-4(a)(1), the mortgage transfer application form signed by plaintiffs omitted any reference to the existence and rehabilitation of the Cayey dwelling. Fernandez testified that plaintiffs made no mention to FmHA officials of their Cayey property. He also testified that there was an agreement that monthly payments "would automatically pass on to Mr. Colon's name for him to keep on paying."

Two weeks later, plaintiffs moved into the Humacao house. From this point on, nothing happened that accorded with what anyone could have rationally intended. The FmHA apparently at that time had such a backlog of investigations that, even though a credit report had been filed in July of 1979, its investigation of the proposed transfer in the case at bar was not completed even a year later. In the meantime, plaintiffs made no payments on the mortgage for an entire year, lived in the house for at most several months, after which they returned to their reconstructed Cayey house. By October of 1979 their children were attending school in Cayey, and the Cayey residence was using a normal amount of electricity, while the electricity and water meters for the Humacao house showed monthly consumption rates that were but fractions of normal usage. By March or April of 1980, the yard at Humacao was sprouting grass two or three feet high and the house was visibly in need of maintenance.

Some eight months after plaintiffs took over the Humacao house, Fernandez, who was buying a new house, found out from a credit bureau report that his mortgage with FmHA was in arrears for the entire period. He located the Colons in Cayey and, on April 21, 1980, he and plaintiffs at long last executed a deed to the house, a provision of which bound plaintiffs to conforming to FmHA regulations. He testified that Mr. Colon Roman had told him that he had reached an agreement with the agency as to the payment of arrears.

Finally, on July 5, 1980, the property was posted with signs warning that trespassing and vandalism would be subject to federal prosecution. The same day, an FmHA official instructed plaintiffs to return to and reenter the house. Two weeks later, plaintiffs claimed, another FmHA employee came, with a family interested in renting the property, and ordered plaintiffs to leave. But the only evidence credited was that the employee merely engaged in friendly conversation and had no intention of renting the house to the family accompanying him.

The district court wrote a thoughtful and painstaking opinion. We endorse and accept it. We add our very simple analysis. Plaintiffs' sole theory, underlying both their Bivens claims and their Federal Tort Claims Act claims, was, as they described it in the Proposed Pre-Trial Order signed by both counsel, that "their property was unlawfully and unconstitutionally taken away from them."

In the first place, plaintiffs' "property" was the equity interest that the Fernandez's sold to them, subject to the mortgage. Under the terms of the mortgage, FmHA had "at all times the right to inspect and examine the assets in order to determine whether [the property] has ... deteriorated," in which event warnings would be placed to avoid vandalism. Further, if the mortgagor were to abandon the property, FmHA was authorized to take possession, to lease it, and to apply rents to payment of the debt. Although the court's finding of certain abandonment by June, 1980, was well supported, FmHA never got to this second step. Certainly its actions in inspecting and posting were within the authority given it under the Fernandez mortgage. And, equally certainly, the Colons could assert no greater rights than could the Fernandez's. Since the Fernandez's could demand no notice prior to entry to inspect for determination or the posting of warnings, neither could plaintiffs.

In the second place, there was no credible evidence that plaintiffs were ordered to leave the house after they received the instruction to return to it. The testimony of the alleged evicter, Mr. Bengochea, does

not in the least support plaintiffs' allegations. This single alleged fact was the linchpin of any claim of taking; the only evidence credited by the court being to the contrary, plaintiffs' case evaporates.

The harsh fact is that plaintiffs never even stepped into the shoes of an FmHA borrower. The transfer of the mortgage was never completed. Indeed it now seems clear that plaintiffs were technically ineligible, owning as they did another valuable property in Cayey. Even though this defect might have been overlooked, the requirement of intent to dwell permanently in the mortgaged house was not. Indeed, as late as September, 1980, FmHA was apparently willing to resume the processing of papers if Mr. Colon Roman (now divorced) were willing to move back permanently.

When we add the fact that plaintiffs, despite their agreement to keep up payments on the mortgage, never made a single payment, and the further observation that the record is bereft of adequate evidence to support a damage award, we cannot escape the conclusion that, as a legal matter (as distinguished from a miserable human predicament), the claims asserted were a travesty. Only the poverty and mental-emotional condition of plaintiffs justifies a failure to impose counsel fees.

*Affirmed.*