**Don ODESSKY et al., Plaintiffs,**

**v.**

**The FEDERAL TRADE COMMISSION et al., Defendants.**

Civ. A. No. 78–2355.

United States District Court, District of Columbia.

May 22, 1979.

John Marshall Meisburg, Washington, D. C., for plaintiffs.

Ann DuRoss, Asst. U. S. Atty., Washington, D. C., for defendants.

### MEMORANDUM

GASCH; District Judge.

This is a complaint for declaratory and injunctive relief and money damages against the Federal Trade Commission ("FTC" or "Commission") and seven present or former officials and attorneys of the Commission, who are sued in their individual and official capacities. Plaintiffs are Don Odessky, his wife Natalie, and Don Odessky, Inc., a California marketing firm of which Mr. Odessky is president. Plaintiffs contend that defendants have committed unconscionable, arbitrary, and illegal acts, representing an abuse of public office and constituting the intentional tort of bureaucratic harassment of a small businessman. Upon consideration of the pleadings and the arguments of counsel, the Court concludes that, for the reasons stated below, this action should be dismissed for failure to state a claim upon which relief can be granted.

### FACTUAL BACKGROUND

In early 1970 Plaintiff Don Odessky requested an advisory opinion from the FTC regarding the legality and propriety of his planned marketing business, which involved promotional displays of small food suppliers' products in end-of-aisle stands in grocery stores.[1] Any person, partnership, or corporation may request advice from the Commission with respect to a course of action that the requesting party proposes to pursue and the Commission, where practicable, will inform the requesting party of the Commission's views through what is popularly known as an advisory opinion. 16 C.F.R. § 1.1 (1978). The FTC will not proceed against the requesting party with respect to any advice taken in good faith reliance upon an advisory opinion, when all relevant facts were fully, completely, and accurately presented to the Commission and when such action was promptly discontinued upon notification of recision or revocation of the Commission's approval. *Id.* § 1.3(b).

Mr. Odessky received a favorable advisory opinion letter on April 6, 1970, and began

---

1. Mr. Odessky's plan involved artistically designed aisle-end merchandising displays featuring products of participating suppliers. The displays were of varying sizes so as to be usable by both large and small outlets. Payments were made to participating retailers based on a percentage of purchases. *See* Exh. E to complaint.

his marketing operation. In October, 1973, however, the advisory opinion was revoked on the ground that it was not in conformity with the FTC's Guide for Advertising Allowances and Other Merchandising Payments and Services (as amended August 4, 1972).[2] Eleven other advisory opinions dealing with comparable merchandising plans were revoked at the same time.

Mr. Odessky sought the assistance of his congressman to challenge the FTC's action and to obtain a new advisory opinion and during the next two years numerous inquiries were made and correspondence exchanged regarding the matter.[3] On January 26, 1976, Mr. Odessky was informed that the FTC had issued a revised advisory opinion, approving his modified promotional plan. This advisory opinion was conditioned, however, on the requirement that Mr. Odessky file a yearly written report regarding the operation of his business. Mr. Odessky filed the first such report with the FTC on January 29, 1977.[4]

In June, 1977, Mr. Odessky received a letter from the FTC indicating that the reporting requirement imposed by the advisory opinion had not been satisfied and requesting him to provide additional information, including the names of suppliers and retailers who participated in his program. Following discussions with the FTC, plaintiff refused to provide this information, citing the harmful effects of adverse publicity and the possible subjection of his clients to burdensome reporting requirements. He claimed that his business would be irreparably damaged by disclosure of this information, thereby resulting in a deprivation of liberty and property in violation of the fifth amendment.

On June 30, 1978, the FTC notified Mr. Odessky that it had initiated a formal investigation into the activities of Don Odessky, Inc. to determine whether the company may be engaged in unfair methods of competition or in unfair or deceptive acts or practices in violation of section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45 (1976). Specifically, the Commission expressed its concern that suppliers might be involved in illegal discriminatory practices in furnishing promotional allowances or other services to retailers through Don Odessky, Inc.[5] The notice of formal investigation also renewed the FTC's request for information regarding the identity of suppliers and retailers, and the amount of promotional allowances.

Plaintiffs filed the present lawsuit on December 14, 1978, alleging harassment, intimidation, and other illegal acts. The complaint seeks a preliminary and permanent injunction to prevent the FTC from taking any further action with respect to Don Odessky, Inc. until resolution of the lawsuit, as well as $7.2 million in compensatory and punitive damages.

On January 11, 1979, the FTC notified Mr. Odessky that it was revoking the 1976 advisory opinion. Plaintiff sought a temporary restraining order to prevent this revocation, but was unsuccessful in this regard. Other legal efforts to prevent revocation similarly failed.[6] The issues are presently before the Court on plaintiffs' motion for a

---

2. The advisory opinions were revoked because they were not in accord with the Commission's view of subsections (d) and (e) of section two of the Clayton Act. Federal Trade Commission News Release, October 25, 1973, Exh. C to Complaint.

3. *See* Exhs. D–1 to D–3 to Complaint.

4. Exh. G to Complaint.

5. Exh. H to Complaint.

6. On January 16, 1979, plaintiffs filed a petition for review of administrative agency action in the United States Court of Appeals for the District of Columbia Circuit, which denied plaintiffs' requested relief in its entirety on January 18, 1979. Meanwhile, on January 17, 1979, plaintiffs filed a second action in this court with the FTC as the sole named defendant, seeking reinstatement of the advisory opinion and injunctive relief barring publication of the notice of revocation. This suit was dismissed as duplicative of the present action. On January 19, 1979, plaintiffs applied to the United States Supreme Court for a stay of the FTC's revocation, but this application was also denied.

preliminary injunction and defendants' motion to dismiss.[7]

*MERITS*

Because likelihood of success on the merits is a prerequisite to obtaining a preliminary injunction,[8] it is appropriate first to consider the issues raised by defendants' motion to dismiss, which alleges that the Court lacks jurisdiction over the subject matter of this complaint and that service of process on the individual defendants was insufficient.

Plaintiffs have pleaded six jurisdictional bases for their complaint: the Declaratory Judgment Act,[9] mandamus,[10] the Administrative Procedure Act,[11] the Federal Tort Claims Act,[12] section 1985,[13] the fifth amendment, and the *Bivens* doctrine.[14] Defendants contend that none of these constitutional or statutory provisions provide jurisdiction in the present case. Plaintiffs' written opposition to the motion to dismiss addressed only the question of jurisdiction under the *Bivens* doctrine and at oral argument plaintiffs' counsel appeared to concede that none of the other bases of jurisdiction are applicable, a conclusion with which the Court agrees.

Defendants challenge the applicability of the *Bivens* doctrine, arguing that the fifth amendment does not support an implied constitutional cause of action and, even if it did, the governmental conduct challenged in this case does not rise to the level of a constitutional violation. In *Bivens* the Supreme Court recognized a private right of action for money damages for violations by federal officials of constitutional rights protected by the fourth amendment. 403 U.S. at 397, 91 S.Ct. at 2005. There has been some judicial reluctance, however, to hold that a private right of action to recover monetary damages is available for all constitutional violations.

Plaintiffs here base their constitutional claim upon alleged

> harassment, intimidation and other illegal acts committed by the Defendants [resulting] in a great loss of business profits, and other damages to the growth and success of Don Odessky, Inc.[15]

These illegal acts presumably include revocation of the two advisory opinions. In addition, plaintiffs claim that revelation of the identity of business customers to the FTC would result in a "wide-ranging investigation" that would create adverse publicity, destroy the marketing program, and constitute a deprivation of liberty and property without due process of law.[16] Cast in constitutional terms, plaintiffs' complaint appears to allege violations of fifth amendment due process rights, first amendment freedom of speech, and fourth amendment right to be protected against unreasonable seizures.

The Court finds that the latter two claims are clearly without merit. The alleged injury to plaintiff's first amendment freedom of speech consisted of a "threatening" letter[17] received by Mr. Odessky from the Commission shortly before he was to give testimony at a congres-

---

7. Defendant James Halverson, former Chief of the Bureau of Competition, has not sought to be represented by the Government and is not a party to this motion.

8. *Washington Metropolitan Area Transit Assoc. v. Holiday Tours,* 182 U.S.App.D.C. 220, 222, 559 F.2d 841, 843 (1977); *Virginia Petroleum Jobbers Ass'n v. FPC,* 104 U.S.App.D.C. 106, 110, 259 F.2d 921, 925 (1958); *Trans World Airlines, Inc. v. Federal Energy Office,* 380 F.Supp. 560, 567 (D.D.C.1974), *aff'd,* 520 F.2d 1339 (D.C. Cir.1975).

9. 28 U.S.C. §§ 2201, 2202 (1976).

10. 28 U.S.C. § 1361 (1976).

11. 5 U.S.C. § 552 (1976).

12. 28 U.S.C. §§ 1346(b), 2671 *et seq.* (1976).

13. 28 U.S.C. § 1343 (1976); 42 U.S.C. § 1985 (1976).

14. 28 U.S.C. § 1331 (1976); *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

15. Complaint, ¶ 52.

16. *Id.* ¶¶ 32, 52.

17. *See* Exh. H to Complaint.

sional hearing conducted by the Antitrust, Consumers, and Employment Subcommittee of the House Small Business Committee. This letter notified plaintiffs that the FTC had initiated a formal investigation of Don Odessky, Inc. and that records relating to the promotional allowances should not be destroyed until the investigation was concluded. Attached to the letter were pertinent sections of the Federal Trade Commission Act.

These statutes provide authority for the Commission to conduct investigations and to compel production of evidence in the course of such investigations.[18] Thus, the notice of investigation contained in the June 30, 1978 letter did not constitute an "illegal attempt to intimidate" a congressional witness nor impermissibly violate Mr. Odessky's first amendment rights. Because statutory authority similarly supports the FTC information-gathering process,[19] compelled production of business information cannot constitute an unreasonable seizure violative of the fourth amendment, as plaintiff suggests.

■ The fifth amendment prevents the federal government from depriving any person of a liberty or property interest secured by the Bill of Rights or by federal statutes without due process of law. A plaintiff advancing a due process claim must first identify a protected liberty or property interest and then prove that the government did not afford him due process of law when it deprived him of it.[20]

■ No such protected property interest can be identified in a favorable advisory opinion. There is no statutory entitlement to such an opinion. The regulations of the FTC indicate that the Commission has broad discretion in making the decision to grant an advisory opinion.[21] Any advice given is without prejudice to the right of the Commission to reconsider the questions involved and, where the public interest requires, to rescind or revoke the advice. 16 C.F.R. § 1.3(a) (1978).

To the extent that plaintiffs' fifth amendment claim is predicated on the revocation of and refusal to issue a favorable advisory opinion, there is no protected fifth amendment right. In addition to their general claim of harassment by the FTC, in which the Court finds no merit, plaintiffs also allege that their business would be destroyed by the compelled production of clients' names and that they are thus deprived of property without due process.

■ The Federal Trade Commission Act authorizes the Commission to gather information concerning, and to investigate the conduct and practices of, any person, partnership, or corporation engaged in or whose business affects commerce. 15 U.S.C. § 46(b). To fulfill this statutory mandate, the Commission may require annual or special reports or answers in writing to specific questions. *Id.* [22]

18. Federal Trade Commission Act, §§ 6, 9–10, 15 U.S.C. §§ 46, 49–50 (1976).

19. *Id.* § 6(b); 15 U.S.C. § 46(b) (1976).

20. *See Board of Regents v. Roth*, 408 U.S. 564, 570–71, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1974) (court must look first to nature of interest involved and then to form of procedure required in determining whether state refusal to hire college teacher violated due process).

21. 16 C.F.R. § 1.1 (1978) states the FTC's policy regarding advisory opinions:

Any person, partnership, or corporation may request advice from the Commission with respect to a course of action which the requesting party proposes to pursue. It is the Commission's policy to consider requests for such advice and, where practicable, to inform the requesting party of the Commission's views. A request ordinarily will be considered inappropriate for such advice: (a) Where the course of action is already being followed by the requesting party; (b) where the same or substantially the same course of action is under investigation or is or has been the subject of a current proceeding, order, or decree initiated or obtained by the Commission or another governmental agency; or (c) where the proposed course of action or its effects may be such that an informed decision thereon cannot be made or could be made only after extensive investigation, clinical study, testing, or collateral inquiry.

22. Such reports and answers must be made under oath and must be filed within such period of time as the Commission prescribes. 15 U.S.C. § 46(b) (1976). Refusal to submit re-

The Supreme Court has emphasized that loss of employment or other economic injuries that result only indirectly from government actions, including government investigations, do not provide a cause of action under the due process clause of the fifth amendment. In *Hannah v. Larche*, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960), the Court held that witnesses testifying in investigations by the Civil Rights Commission did not have any due process rights to appraisal, confrontation, or cross-examination even though the Commission's proceedings might subject them to public scorn and the loss of their jobs. *Id.* at 442, 80 S.Ct. at 1514. The Court stated that "even if such collateral consequences were to flow from the Commission's investigations, they would not be the result of any affirmative determinations made by the Commission, and they would not affect the legitimacy of the Commission's investigative function." *Id.* at 443, 80 S.Ct. at 1515.

*Hannah* was recently relied on in *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), in which the Supreme Court found no cause of action for injury to reputation under the due process clause of the fourteenth amendment. Plaintiff had alleged that the police department circulated false and derogatory information about him, injuring his reputation and affecting his ability to obtain future employment. Although recognizing that the government conduct may have drastic consequences for an individual, the Court held that the only direct injury was to plaintiff's reputation and that because plaintiff's interest in reputation was not guaranteed by state law, the due process clause of the fourteenth amendment did not support a cause of action. *Id.* at 712, 96 S.Ct. at 1165.

▆ Plaintiffs here have no constitutionally protected right to refuse to produce information requested in connection with a formal investigation, just as they have no right to a favorable advisory opinion. Moreover, the alleged potential destruction of plaintiffs' business is only a collateral consequence of government action for which plaintiffs have no protected due process rights.

*CONCLUSION*

Because plaintiffs have failed to show a constitutionally protected right, they have no likelihood of success on the merits and their motion for a preliminary injunction must be denied. The Court is not without sympathy for the position of a small businessman who feels that his attempts to earn a livelihood are being thwarted by a regulatory bureaucracy. Yet a careful review of the facts and issues presented by this lawsuit convinces the Court that plaintiffs have failed to state a claim upon which relief can be granted and accordingly, this action must be dismissed.[23]

---

ports required by the Act may result in civil and criminal penalties. *Id.* § 50.

**23.** It is therefore unnecessary to reach the questions of personal jurisdiction and service of process, which are raised as defendants' alternative grounds for dismissal. Although defendant James Halverson has not joined the defendants' motion to dismiss, it appears to the Court, for the reasons stated above, that plaintiffs can raise no cognizable claim against him for actions undertaken by him in his official capacity as Chief of the Bureau of Competition. Consequently, the Court, *sua sponte*, will dismiss the complaint against him as well.