SUHRHEINRICH, Circuit Judge,
dissenting.
The majority reverses the district court’s decision and grants summary judgment in favor of Garner on the issue of liability. Because I believe that the majority’s actions ignore the facts of this case and the law of this circuit, I must respectfully dissent.
I.
This case began eighteen years ago when Officer Hymon, a young black policeman with the Memphis Police Department, shot and killed Edward Garner, another young black man who, though unarmed, was attempting to avoid arrest for the burglary he had just committed. Officer Hymon’s decision, made in a split second and under potentially-threatening conditions, has been evaluated and re-evaluated in courtrooms from the Western District of Tennessee to the United States Supreme Court.
This litigation has spanned and, in some instances, created many of the most profound changes in the law surrounding actions brought under 42 U.S.C. § 1983. In 1975, when this suit was filed, it was absolutely clear that the City and the Police Department, the only remaining defendants in this case, could not even be sued under § 1983.[1] Moreover, it was virtually undisputed that a police officer could use all reasonably necessary force, including deadly force, to stop a fleeing felon. The Tennessee legislature adopted the common law “fleeing felon” rule *367 before the turn of this century, Tenn.Code Ann. § 40-7-108, and that statute had withstood repeated state and federal judicial scrutiny.
Officer Hymon’s conduct was assailed as unconstitutional despite the fact that the Tennessee statute and the long-standing common law rule specifically authorized the use of deadly force in such circumstances. In 1976, the district court entered judgment in favor of the defendants on the grounds that the shooting of young Garner was not a violation of the United States Constitution.
This court affirmed the district court’s judgment as to the individual defendants but remanded for reconsideration in light of Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), which had held that municipalities could be sued under § 1983.[2] The district court again entered judgment for the City and the Department, again on the grounds that there had been no constitutional deprivation. This court again reversed, holding that Officer Hymon’s actions violated the Fourth and Fourteenth Amendments.[3] That decision was affirmed by the United States Supreme Court and the case was once again remanded to the district court for consideration of the City’s and Department’s liability under Monell.[4] Again, the district court found no liability, this time on the grounds that intervening case law in this circuit prevents a city from being held liable for “Garner ” shootings that occurred before the Supreme Court’s ruling on that issue. Now, again, this court is determined to reverse.
A. Monell
It has been clear, at least since 1978, that liability in this case, if any, must be determined under Monell. The majority, continually dissatisfied with the district court’s results, now enters summary judgment itself against the City and the Department on that basis. The majority errs, in my view, because the facts of this ease, as presented in the record before us, do not support Monell liability.
The majority correctly sets forth the three elements of Monell liability: (1) an official “policy” or “custom” (2) created by the city or department, (3) the execution or implementation of which caused the particular constitutional injury. Maj. Op. at 363. See Monell, 436 U.S. at 694, 98 S.Ct. at 2037. The majority identifies the policy upon which it would base liability, Memphis Police Department General Order 5 — 74 (3) (b) (3), and holds that it is the official product of departmental and city policymakers. Maj. Op. at 363-64. I have no quarrel with the majority over these assessments. The majority’s error, I believe, lies with its analysis of the third Monell element:
Having identified the policy and connected it to the defendants, plaintiff need only show that the policy caused the injury complained of, the death of the plaintiffs son. Defendants do not contest the causation issue.
Id. at 363-64 (emphasis added).
I disagree. The City and the Department have done nothing for the last eighteen years but contest the fact that this policy caused Garner’s death. The defendants have consistently and urgently pleaded with this court and the district court to understand that Officer Hymon acted under the authority of Tennessee state law, a law that governed the conduct of all Tennessee law enforcement. Now, simply because the Department and the City took upon themselves the task of drafting a more restrictive — but, in the exercise of hindsight, still unconstitutional — policy, the majority is holding them liable.[5]
To hold the Department and the City liable, however, the majority must ignore the third Monell element: causation. The policy *368 upon which the majority fixes liability is Departmental Order 5-74. The majority makes no mention of the fact that the order is dated February 5, 1974, only eight months before Officer Hymon shot Garner and more than six months after Officer Hymon’s initial eight-week training course that he received upon joining the Department. There is no evidence that Officer Hymon was ever trained under Departmental Order 5-74. On the other hand, the record contains every indication that Officer Hymon was trained on the use of deadly force according to the guidelines established by the Tennessee legislature and the common law.
Even if the majority’s assumption is correct, that between February and October of 1974, Officer Hymon was informed of Departmental Order 5-74, it is illogical to assume that he was instructed as to anything other than how the new policy differed from the state guidelines and common law rule he had already been taught.
It is not disputed that Officer Hymon’s actions that night came within that portion of the fleeing felon rule that Departmental Order 5-74 left unchanged. He had been taught, before Departmental Order 5-74 was ever written, that he was allowed, even duty-bound, to use deadly force in such situations, provided it was reasonably necessary in order to effect the arrest. Officer Hymon was not “executing” or “implementing” Departmental Order 5-74 when he shot Garner; he was acting as he had been taught to act, in accordance with a one-hundred-and-sixteen-year-old statute and a common law rule that had existed for hundreds of years. Therefore, it cannot be said that the Department’s policy was the “moving force of the constitutional violation.”
The majority is impaled upon the horns of a dilemma. It cannot hold the City and the Department liable for failing to draft a constitutional policy or for failing to train its officers in the constitutional use of deadly force. These theories require a showing of the City’s and the Department’s “deliberate indifference” to the rights of arrestees. Such a showing is impossible in this ease due to the centuries of approval courts had given the fleeing felon rule. Nor can the majority rest liability on the statute or the common law, the patently obvious “moving forces” here, because these cannot be fairly attributed to the City. The majority’s only means of holding the City and the Department liable, therefore, is to assert that Departmental Order 5-74 killed Garner, despite the fact that there is no evidence to support a conclusion that Officer Hymon was “executing” or “implementing” that policy, rather than the statute or common law, when he shot Garner.[6]
B. Carter
In 1982, after the shooting in this case but before the Gamer decision, a Chattanooga police officer shot and killed a fleeing burglary suspect. Carter v. City of Chattanooga, 850 F.2d 1119 (6th Cir.1988) (en banc), cert. denied, 488 U.S. 1010, 109 S.Ct. 795, 102 L.Ed.2d 786 (1989). In Carter, therefore, neither the City of Chattanooga nor its police department had any more reason to believe that the common law rule or Section 40-7-108 of the Tennessee Code were unconstitutional than did the City and the Department in the case before us now. On those grounds, in Carter, a majority of this court en banc held that the city was not liable for the unconstitutional shooting. The majority in this case, however, refuses to adhere to this holding.
The court in Carter reasoned that it would be pointless and inequitable to impose liability for a city’s failure to foresee the Supreme Court’s decision in Garner, because Garner “established a new and unexpected principle of law setting aside clear precedent, particularly in this circuit, on which the City of Chattanooga and its police officers had a right to rely." Carter, 850 F.2d at 1129 (emphasis added). Pointless, because to impose liability would “have little, if any, effect of furthering the deterrent goal of Garner.” Id. at 1130. Inequitable, because the City of Chattanooga “was more than merely exercis *369 ing good faith [as to a murky area of the law]; it was acting in reliance on what appeared over many years to have been valid and proper state directed police conduct and policy.” Id. at 1131.
The district court, in the present case, found “no basis upon which to distinguish the Carter decision from this case and the issue presently before the court.” Accordingly, it entered summary judgment in favor of the City and the Department. The majority rejects the district court’s conclusion and asserts that Carter has no impact because “the Supreme Court intended its ruling in [Garner] to be applied retroactively to the parties.” In this single utterance, the majority misconstrues both the Carter and the Gamer decisions.
The Supreme Court’s holding in Gamer was carefully limited to declaring unconstitutional the actions of officer Hymon and the Tennessee statute which authorized them. No one is arguing that Gamer should not be applied retroactively. The Supreme Court’s holding is being given full force and effect; it is now undisputed in this case, just as it was undisputed in Carter, that the officer’s shooting was unconstitutional. The ultimate issue, however, both in Carter and in the present case, is whether the City and the Department are liable in damages for that deprivation. On this issue, the Supreme Court carefully expressed no opinion and thus there is nothing to be given “retroactive effect.” In Carter, on the other hand, this court squarely held that such liability could not be imposed. The majority’s cryptic warning, therefore, that “[n]either this court nor the district court is free to reexamine the Supreme Court’s ruling,” is misdirected. It is the majority that should take care not to attribute to the Supreme Court rulings it has not made.
To be sure, a panel of this court in Gamer II opined that the City’s and the Department’s reliance was irrelevant. Garner II, 710 F.2d at 248-49. Carter, however, disavowed this dicta and held that a City’s good faith reliance on the fleeing felon rule prior to the Supreme Court’s decision in Garner precludes liability for pre-Gamer shootings. Therefore, I would hold that the district court correctly applied Carter to resolve this case in favor of the City and the Department. The majority errs, in my view, by refusing to give Carter controlling effect.
II.
Cleamtee Garner has persuaded the highest court in the land to declare, without equivocation, that his son died in violation of some of this county’s most deeply-held principles. Just as fundamental, however, is the principle upon which this court relied in Carter: it is simply not fair, and not in keeping with the letter, the purpose or the intent of 42 U.S.C. § 1983 to hold the City and the Department liable in damages for young Garner’s death when they could not have known that the actions of its officers were unconstitutional. The determination that the death of Mr. Garner’s son was unconstitutional is, and must be, a separate question from whether the citizens of Memphis must compensate that tragedy under § 1983.
I would affirm the district court’s judgment in favor of the City and the Department and, therefore, respectfully dissent.

. See Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) (municipalities not "persons” within the meaning of § 1983), overruled by Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Originally, the City and the Department, not amenable to suit under § 1983, were sued directly under the Fourth and Fourteenth Amendments and. the general federal question statute, 28 U.S.C. § 1331, in a Bivens-style action. See Bivens v. Six Unknown Named Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

. Garner v. Memphis Police Dep’t, 600 F.2d 52 (6th Cir. 1979).

. Garner v. Memphis Police Dep't, 710 F.2d 240 (6th Cir.1983) (hereinafter “Gamer II").

. Tennessee v. Garner, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) (hereinafter “Gamer").

.Given this court's decision in Carter v. City of Chattanooga, 850 F.2d 1119 (6th Cir.1988) (en banc), cert. denied, 488 U.S. 1010, 109 S.Ct. 795, 102 L.Ed.2d 786 (1989), discussed infra, the City and the Department in this case will most assuredly be the only entities held liable for acting in reliance upon the hundreds of years of the fleeing felon rule, at least in this circuit.

. Ironically, the majority cannot even assert that the Department is liable for failing to train its officers under the new policy in a more timely manner because the new policy made no change to the fleeing felon rule relevant to the shooting of Garner.