[NOT FOR PUBLICATION]

 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT

 

No. 97-1501

 CAMERON JENNINGS DODSON,

 Plaintiff, Appellant,

 v.

 JANET RENO, ET AL.,

 Defendants, Appellees.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF PUERTO RICO

 [Hon. Hector M. Laffitte, U.S. District Judge] 

 

 Before

 Torruella, Chief Judge, 
 Boudin and Stahl,
 Circuit Judges. 

 

Cameron Jennings Dodson on brief pro se. 
Guillermo Gil, United States Attorney, and Agnes I. Cordero, 
Assistant U.S. Attorney, on brief for appellees.

 

 September 11, 1997
 

 Per Curiam. Appellant Cameron Dodson ("Dodson") brought 

this action pursuant to Bivens v. Six Unknown Named Agents of 

the Federal Bureau of Narcotics, 403 U.S. 388 (1971). Dodson 

was convicted of being a felon in possession of a firearm.

He is serving his sentence at the Metropolitan Detention

Center in Guaynabo, Puerto Rico ("MDC Guaynabo"); he

previously served time on this conviction in three federal

prisons, but he was moved to MDC Guaynabo after being

attacked by inmates associated with the prison gang known as

the "Aryan Brotherhood" ("AB").

 Dodson has alleged several constitutional claims

pertaining to his incarceration, but for the purposes of this

appeal, we are mainly concerned with two of them. First,

Dodson claims that officials at MDC Guaynabo and the federal

Bureau of Prisons plan to transfer him to United States

Penitentiary in Marion, Illinois ("Marion") in violation of

the Eighth Amendment. Second, he claims that the same

officials have deliberately kept him at MDC Guaynabo to

retaliate against him and his family for writing various

letters protesting the conditions of his confinement. We

discuss these two claims first and then address Dodson's

remaining constitutional claims.

 1. Dodson's Eighth Amendment claim regarding a transfer

to Marion has two branches. First, he claims that prison

officials at Marion would place him in segregation for the

 -2-

remainder of his prison term in order to protect him from

assaults by the numerous AB members at Marion, and that such

segregation would violate the Eighth Amendment. Second, he

claims that even in segregation, he would be assaulted and

probably killed by AB members. Dodson has sought various

remedies based on this claim, including an injunction against

a transfer to Marion, monetary damages from the officials who

planned to transfer him, an injunction against a transfer to

any federal penitentiary in the United States, an order that

the Bureau of Prisons transfer him to a Washington state

facility, an order to federal officials to prosecute prison

and federal officials for violating his civil rights, and

monetary damages for violations of civil rights.

 We are troubled by the allegations in this case,

although the record is admittedly underdeveloped. It appears

that prison officials did seek to transfer Dodson to Marion,

even though Marion typically houses prisoners who have

serious records of institutional violence or otherwise

require unusually heightened security, criteria that Dodson

apparently does not meet. The government argues that it

abandoned the transfer when it became clear that Marion was

not an appropriate setting for Dodson, but the timing of this

abandonment raises the possibility that the transfer was

abandoned only upon Dodson's initiation of this lawsuit.

Dodson has also made plausible albeit unsubstantiated

 -3-

allegations that efforts to transfer him to Marion will

resume when this case concludes. Dodson alleges that he

could add substance to these allegations if allowed to

undertake discovery. 

 The district court held that Dodson's claims regarding

Marion were mooted by the abandonment of the transfer. The

government has represented that there are no existing plans

to transfer Dodson to Marion or to any other facility in the

United States, and there is no substantial evidence to the

contrary. We therefore agree with the district court that

Dodson has no live claim for an injunction, let alone

monetary damages, regarding a transfer to Marion that did not

materialize, and we do not reach the merits of Dodson's

Eighth Amendment challenges. The district court did not

abuse its discretion in denying discovery. 

 Dodson is free to initiate his lawsuit again to bar a

transfer to Marion if the government renews its transfer

effort. We note that we would view it as bad faith for the

government to resume its attempt to transfer Dodson to Marion

without giving him notice and an opportunity to reapply for

an injunction. The district court's dismissal is plainly

without prejudice to a new lawsuit if the threat is renewed.

 2. Dodson's retaliation claim rests on a different

factual predicate. Dodson claims that federal Bureau of

Prisons officials have been retaliating against him for

 -4-

writing letters complaining of his treatment throughout his

incarceration. He claims this retaliation has occurred not

in the form of the proposed transfer to Marion but in the

form of continued detention at MDC Guaynabo and refusal to

transfer him to a facility in the continental United States.

Specifically, Dodson has repeatedly requested that he be

transferred to a facility in Washington so that he can be

near his family.

 The district court did not directly address the

retaliation claim and apparently treated it as a due process

claim unsoundly premised on the notion that Dodson had a

right to choose his place of incarceration. This confusion

is understandable because Dodson's original complaint did not

expressly state a claim of retaliation. However, given that

Dodson apparently argued the retaliation claim below in

detail and in light of our obligation to construe pro se 

pleadings liberally, see Haines v. Kerner, 404 U.S. 519, 520 

(1972), we will treat Dodson's complaint as amended and

address the retaliation claim here.

 As the district court stated, there is no constitutional

right to be incarcerated in a particular facility. However,

Dodson may state a constitutional claim if his requests for

transfers were denied in retaliation for activity protected

by the First Amendment. See Sandin v. Conner, 115 S. Ct. 

2293, 2302 n.11 (1995); McDonald v. Hall, 610 F.2d 16, 17-18 

 -5-

(1st Cir. 1979). In order to defeat summary judgment, Dodson

must produce some admissible evidence that indicates that he

is being kept in Puerto Rico in retaliation for his letter-

writing.

 Here, Dodson has made factual allegations that, if true,

would certainly prove that prison officials harbor animosity

toward him. However, Dodson has made no showing that

suggests that this animosity is what is keeping him at MDC

Guaynabo. Dodson's strongest evidence is an alleged

statement by MDC Guaynabo's Assistant Warden Tombone that, if

he did not stop writing letters, the Bureau of Prisons would

"spin" him (i.e., transfer him through several prisons in 

rapid succession). There is no indication that this ever

happened. The connection between this hearsay expression of

retaliatory motive and Dodson's continued incarceration at

Guaynabo is tenuous at best.

 Dodson's further allegations that MDC Guaynabo is a

pretrial facility and that no other long-term prisoners have

remained there over a year are, in this case, largely

irrelevant to the issue of retaliatory motive. Given the

prior attacks on Dodson elsewhere in the prison system,

unusual measures were obviously necessary. Indeed, it is

quite plausible to conclude that Dodson has been kept at MDC

Guaynabo in order to protect him from AB attacks. 

 -6-

 Of course, Dodson's lack of evidence of retaliatory

motive is partly due to the district court's refusal to allow

Dodson to undertake discovery. Although this is a close

issue, we hold that the district court did not abuse its

discretion in denying further discovery on the retaliation

claim. See Mattoon v. City of Pittsfield, 980 F.2d 1, 8 (1st 

Cir. 1992). We therefore affirm the district court, but in

view of his pro se status modify the judgment to reflect that 

the dismissal is without prejudice.

 3. Dodson also raises certain other claims, which the

district court correctly dismissed with prejudice. Dodson

claims that keeping him at MDC Guaynabo violates due process

and equal protection principles because most inmates are

Spanish-speaking, there are few programs that are relevant to

his rehabilitation, and it is located thousands of miles from

his family in Washington State. However, Eighth Amendment

limitations aside, an inmate has no general right to demand

that his incarceration meet particular conditions. See 

Meachum v. Fano, 427 U.S. 215, 224-25 (1976). 

 Dodson also seeks monetary damages from federal

officials for failing to protect him from previous assaults

by AB members while he was in federal custody. However, he

has not named any defendants who would have been responsible

for his placement in the general population of prisons where

these assaults took place. Dodson cannot sue supervisory

 -7-

officials of the Bureau of Prisons on a theory of respondeat

superior. See Gutierrez-Rodriguez v. Cartagena, 882 F.2d 

553, 562 (1st Cir. 1989).

 Finally, Dodson claims the right to physical access to

the MDC Guaynabo prison law library. It appears that Dodson

has access to the library through written requests for law

books; the prison has security regulations barring inmates

from physical access at will. An inmate does not have a

right to access a law library unless restrictions on access

impair his ability to assert legal challenges. See Lewis v. 

Casey, 116 S. Ct. 2174, 2182 (1996). Similarly, this court 

has no authority to appoint counsel in this civil suit. See 

Mallard v. United States District Court, 490 U.S. 296 (1989). 

 To conclude: the dismissal as moot of Dodson's Eighth

Amendment claim for injunctive relief against a transfer to

Marion is affirmed on the understanding that the dismissal is 

without prejudice as to reassertion of the claim in the event

of a new threat to transfer him. Dismissal of Dodson's

retaliation claim is also affirmed without prejudice as to 

reassertion if Dodson obtains evidence of a retaliatory

motive for keeping him at MDC Guaynabo. In all other

respects the district court's judgment of dismissal with

prejudice is affirmed. 

 It is so ordered.  

 -8-