54 F.3d 779
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 Leonard L. SHAND, Plaintiff-Appellant,
v.
P. W. KEOHANE, et al. Defendants-Appellees.
 No. 94-2796.
 United States Court of Appeals, Seventh Circuit.
 Submitted May 18, 1995.[1]
Decided May 18, 1995.
 
 Before POSNER, Chief Judge, and CUMMINGS and BAUER, Circuit Judges.
 
 ORDER
 
 1
 Plaintiff Leonard Shand, an inmate at the United States Penitentiary at Terre Haute, Indiana,[2] appeals from a district court order entering summary judgment in favor of the defendant prison officials in this civil rights case, filed pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), alleging Eighth Amendment violations when plaintiff was twice kept in four-point soft restraints.
 
 
 2
 In order to establish an Eighth Amendment violation, plaintiff must show that he was subjected to conditions posing a "substantial risk of serious harm," and was denied "the minimal civilized measure of life's necessities." Farmer v. Brennan, 114 S. Ct. 1970, 1977-78 (1994). In regard to his excessive force allegations, plaintiff must show that officials applied force "maliciously and sadistically for the very purpose of causing harm." Id.
 
 
 3
 The evidence before the district court, including correctional officers' logs and affidavits, established that in the Fall of 1992, the time period when Shand was twice put in restraints, there was a great deal of unrest and disruption in the segregation unit, much of it instigated or at least encouraged by Shand. He states in his brief that "everyone admits that there was a protest," which he alleges involved correctional officers' assaulting some unnamed inmate "because he refused to give them a plastic cup." Shand states further: "No one is saying that the inmate was right but there are much better ways to handle the situation," since the inmates feared they were "going to be next" and also assaulted by the officers.
 
 
 4
 Shand's solution was to lead the other inmates in creating various disruptive maneuvers including strewing debris throughout the range (the walkway outside the prison cells), throwing feces and urine at guards, starting fires, and making verbal threats to the guards.[3] The strategy was successful in creating a potentially violent uprising in the segregation unit. On September 27, 1992, Shand threw urine and feces at an officer, striking him in the eye, resulting in damage to the eye. He was subsequently convicted of assaulting a federal correctional officer and sentenced to an additional 18 months' imprisonment.[4]
 
 
 5
 The correctional officers' log shows that disruptions were escalating on the night of November 11, 1992. Shand created a disruption by refusing to return his food tray, and encouraging others to follow suit. Shand was trying to "dictate running of the unit [by] intimidating officers with threats of throwing feces on them." Later that night, Shand was heard threatening to throw "some hot water or something that will take his skin off" at one particular officer, and threatening to throw urine and feces on other officers. There were "threats to get that [officer] on morning watch." The correctional officers' log for the morning of November 12, 1992, refers to "inmates on range becoming disruptive," and Shand was "flooding [the cell] and throwing things at staff." A Confrontation Avoidance Team persuaded Shand to submit to the application of restraints. At 9:55 a.m., Shand was taken to an isolation cell and placed in four-point soft restraints. Shand was kept in restraints from 9:55 a.m. to 8:30 p.m.
 
 
 6
 Similar events led to the second time Shand was put in restraints. On November 16, 1992, food and milk were being thrown onto the range. On the morning of November 17, 1992, the log notes that the range had been "trashed." By evening, feces and urine were being thrown on the range. At 11:00 p.m., a fire was set in front of or next to Shand's cell, requiring extinguishers and smoke ejectors. The following morning a Use of Force team was required to dispel the increasing disruption. Shand was moved to an isolated cell and kept in four-point restraints. Shand was released from restraints at 4:00 p.m. that day.
 
 
 7
 Moving plaintiff to an isolation cell was necessary to regain control of the range. It was a reasonable, indeed crucial, response to escalating disruption in the segregation unit, much of which was incited by Shand. The correctional officials were responsible for restoring official control during a prison disturbance, using necessary security measures. The restraints were necessary because Shand had been physically violent, and was threatening further violence, which would have greatly escalated the precarious, volatile situation. The restraints were used for security reasons, not for punishment or for the purpose of inflicting pain. Shand's restraints were periodically checked by a physician's assistant, and at one point a wrist restraint was loosened when Shand complained that it was too tight. Shand does not claim that he was not allowed to use a toilet or refused meals. Most significantly, the court has reviewed videotapes of the two cell moves, and they clearly demonstrate that no Eighth Amendment violations occurred.
 
 
 8
 In regard to the number of hours in which Shand was kept in the restraints, we find nothing in the record indicating that the prison officials did not use good faith efforts in trying to maintain discipline, and thus we give great deference to their judgment as to when Shand's violent nature had abated sufficiently to remove the restraints. See Hewitt v. Helms, 459 U.S. 460, 474 (1983) (assessment of when seriousness of threat has abated is purely subjective involving the predicting of "not just one inmate's future actions ... but those of an entire institution"). See also Williams v. Burton, 943 F.2d 1572 (11th Cir. 1991) (no Eighth Amendment violation when inmate kept in four-point restraints for 28-1/2 hours after inmate cursed, threatened to kill officers, and spat on them, threw bodily fluids at them, creating a general disturbance in the prison).
 
 
 9
 No issues of material fact remain, Fed. R. Civ. P. 56(c), and the district court properly entered summary judgment in favor of defendants.
 
 
 10
 AFFIRMED.
 
 
 
 [1]
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed. R. App. P. 34(a); Cir. R. 34(f). No such statement having been filed, the appeal is submitted on the briefs and the record
 
 
 [2]
 Shand has since been transferred to another prison
 
 
 [3]
 Shand's prison disciplinary record is lengthy; many of the incidents involved assault
 
 
 [4]
 We dismissed an appeal of that conviction, United States v. Shand, No. 93-3385 (7th Cir. Sept. 6, 1994) (unpublished order), pursuant to Anders v. California, 386 U.S. 738 (1967)