**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 1, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MARVIN JAMES WHITE,

      Plaintiff - Appellant,

v.

JANE G. BUSER, Acting Unit
Manager, USP - Leavenworth;
WILLIAM McCOLLUM, M.D., USP -
Leavenworth; JOHN DRENAN [sic],
Administrator of Health Services, USP
- Leavenworth; DUKE TERRELL,
Warden, USP - Leavenworth,

      Defendants - Appellees.

No. 09-3322
(D.C. No. 5:08-CV-03152-MLB)
(D. Kansas)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, **ANDERSON**, and **TYMKOVICH**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

of this appeal.  See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

Petitioner and appellant, Marvin James White,[1] a federal prisoner proceeding *pro se*, appeals the grant of summary judgment in favor of the defendants in this Bivens[2] action alleging indifference to his medical needs.  We affirm.

## BACKGROUND

Mr. White's *pro se* brief provides no factual recitation of the case. Accordingly, our factual recitation is based primarily on the district court's fact findings, as supplemented by the record and the defendants' brief.  At all times relevant to this appeal, Mr. White was incarcerated at the United States Penitentiary in Leavenworth.

### I.  Mr. White's Medical Treatment:

On November 10, 2005, Mr. White was seen by the medical staff at the Penitentiary for an intake screening.  Mr. White told the medical staff that he was not taking any medications but that he occasionally had some non-specific back

---

[1]Appellant/Petitioner's Opening Brief dated January 14, 2010, indicates his "true name" is James Richard White.

[2]Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

problems. The medical staff checked on Mr. White again on November 23, 2005, and classified him as a Care Level 1 inmate with no restrictions. Mr. White's medical records indicate that he first complained of back pain on March 20, 2006. On that date, Mr. White sought medical care so that he could get a lower bunk pass. On March 30, 2006, x-rays were taken and they revealed that Mr. White had "Degenerative Disc Disease" ( "DDD"). Accordingly, the prison medical staff scheduled an appointment with an orthopaedic specialist on May 8, 2006. Mr. White failed to attend that appointment.

On March 23, 2007 (basically one year later), Mr. White again sought medical care in order to obtain a lower bunk pass. The medical staff declined his request for a bunk pass because Mr. White did not have any specific complaints or symptoms. Mr. White was again seen by the prison medical staff on May 14, 2007, when he complained of lower back pain, a pinched nerve and the inability to walk more than fifty feet at a stretch. He was prescribed Piroxicam, a nonsteroidal anti-inflammatory ("NSAID") drug. Defendant Dr. William McCollum, the Clinical Director at USP Leavenworth, concurred in this treatment plan.

On June 20, 2007, Mr. White arrived at the USP Leavenworth Health Services Department in a wheelchair and was treated for his complaint of pain in his lower back. Mr. White also claimed he had some numbness in his buttocks and the back of his legs. Mr. White was again diagnosed as having DDD, and he

was given a deep intramuscular injection of 30 mg. of Ketorolac, another NSAID medication commonly used for severe lower back pain. Mr. White was evaluated again, on June 30, 2007, with continued lower back pain, and he was given a larger dose of Ketorolac. He was also moved to the first floor, to make walking easier. Defendant Dr. McCollum again concurred in the evaluation and treatment plan for Mr. White.

Mr. White's problems continued. On July 2, 2007, Mr. White was evaluated in the Health Services Department after complaining of pinched nerves in his back and an inability to walk on his own. Mr. White informed the medical personnel that his pain radiated down his right leg. He was diagnosed with lower back pain, DDD, and a possibly herniated disc. He was then provided with a wheelchair, an early meal pass, a lay-in/idle pass, a prescription for Indomethacin (another NSAID), as well as a prescription for Acetaminophen.

On July 3, 2007, Dr. McCollum requested an x-ray of Mr. White's lower spine, which revealed no abnormalities. That same day, an orthopaedic specialist examined Mr. White. Mr. White told him about his history of lower back pain, including the pain radiating down his leg and his inability to walk for any distance. Mr. White also complained of weakness in his buttocks and urinary incontinence, including his need to use a towel in the place of a diaper. The specialist recommended a myleogram and a computer tomography, to be performed as soon as possible. The specialist further recommended that Mr.

-4-

White continue with the wheel chair and the early meal passes, and consider undergoing surgery for his back. Dr. McCollum consulted with the specialist, who indicated that Mr. White probably was suffering from compression or inflamation of nerves on the lower spinal portion of the spinal canal, and would need a CT scan with a probable follow-up surgical intervention.

Dr. McCollum then arranged an outside hospital visit with a specialist on July 9, 2007. Mr. White was transported there, where a scan revealed that he had "congenital spinal stenosis with mild-to-moderate stenosis at the L2-L3 and L3 to L4." The CT further revealed that Mr. White had a "complete obstruction to the thecal sac at L3-L4 from what appeared to be a large disc herniation." On July 10, 2007, the specialist completed a successful Laminectomy and Disketomy. Mr. White recovered well from the surgery, but continued to have numbness in his legs and feet, weakness in his lower extremities, especially his left side, and difficulty ambulating. Mr. White continues to have numbness in his extremities and incontinence, and he believes that these problems are the result of the delay in surgery, allegedly caused by the defendants.

**II. Mr. White's Grievance Proceedings:**

USP Leavenworth maintains a grievance procedure. Defendant Jane Buser was Mr. White's correctional counselor at Leavenworth, and she assisted him with the grievance process. She has no medical training or background. The first step in the grievance process is the Informal Resolution Form (BP-8), which is

used to document the inmate's grievance and the staff's efforts to informally resolve the grievance. On June 6, 2007, Ms. Buser provided Mr. White with a BP-8 form. Mr. White filled out the form, in which he claimed that he had been trying to obtain medical care for his back since 2003. In particular, Mr. White stated:

> Disc and syactic [sic] nerve problems. Slipped disc and or bulging disc. Now, there may be calcium build up around the syactic [sic] nerve. This time I been this was since July 28, 2006. I would like to be seen by the Orthopedics Dr: Call-Out. Back brace, X-rays of syactic [sic] nerve section.

Doc. 35, Ex. D. The BP-8 was dated June 12, 2007, and was signed by Mr. White on that date, although Ms. Buser did not receive the grievance until June 27, 2007. Ms. Buser reviewed the grievance and contacted the Health Services Department to determine if Mr. White had signed up for sick call. After speaking with the Health Services Department, Ms. Buser responded to the grievance on June 29, 2007, by telling Mr. White, "per medical, return to sick call/triage, get an appointment time or call out with a provider and request a consultation with a doctor." Id.

On July 1, 2007, Mr. White filed his request for Administrative Remedy with the Warden. Mr. White's request documented his physical problems with his back and the care he received on June 20 and 30 of 2007. Mr. White requested an MRI and an appointment with an orthopedic physician. As indicated above, Mr. White did, in fact, see an orthopaedic specialist on July 3, 2007, and was

-6-

operated on a week later. On August 22, 2007, Acting Warden Jack Fox issued a denial of Mr. White's grievance. Warden Fox stated that the treatment and surgery performed on Mr. White was sufficient. Defendant Duke Terrell, the Warden at Leavenworth until August 2007, did not review Mr. White's grievance.

On September 4, 2007, Mr. White filed an appeal with the Regional Director. Mr. White documented the chronological events of his own medical care and stated that the delay in surgery resulted in nerve damage and incontinence. On October 26, 2007, the Regional Director denied Mr. White's appeal and stated that the medical staff was responsive to his needs. On November 29, 2007, Mr. White filed an Administrative Remedy Appeal with the Office of General Counsel, complaining that the Health Services Department had failed to send him out for surgery in a timely manner. On April 7, 2008, the Administrator of National Inmate Appeals denied Mr. White's appeal, because a review of the matter failed to find any clinical indication that Mr. White had been denied appropriate medical care or been subjected to delay in treatment. Mr. White filed no other grievances relating to his medical treatment.

On June 19, 2008, Mr. White filed this complaint against six defendants initially,[3] alleging violations of his Fifth and Eighth Amendment rights. Mr. White claims that Ms. Buser violated his rights by failing to get medical

[3]The district court judge ultimately dismissed Mr. White's claims against defendants Michael Nally (the Regional Director) and Harrell Watts (the Administrator of National Appeals).

attention for him when she observed him sitting at the bottom of the steps in pain. Mr. White also alleges that Ms. Buser could have made a call to get him (Mr. White) treatment immediately.

Mr. White alleges that Dr. McCollum denied his requests for medical care by not releasing him for surgery on July 5. He also claims that McCollum has not provided him with his medical files.

Finally, Mr. White claims that John Drennan, the Administrator of Health Services, and Duke Terrell, the Warden of USP Leavenworth from July 2005 until August 2007, violated his rights by failing to provide medical care in a timely manner.

The defendants filed a motion to dismiss or, alternatively, a motion for summary judgment. After observing that "exhaustion is required for all prisoner suits seeking redress for prison circumstances or occurrences, regardless of whether they involve general circumstances of incarceration or particular episodes," the court then stated that Mr. White "was required to exhaust his administrative remedies through the BOP's three-step grievance process before filing a federal suit." Memorandum & Op at 9, R. Vol. 3 at 90. The court then concluded that Mr. White had failed to exhaust all of his claims relating to his medical treatment at USP Leavenworth, except for his claims concerning "the delay of medical treatment and surgery." Id. at 10. With respect to those claims,

the court found that the "only defendant involved in [Mr. White's] treatment was McCollum." Id. at 13. With respect to Dr. McCollum, the court found:

> the Tenth Circuit [has] held that a delay of five months for surgery did not equate to deliberate indifference when the record presented evidence of a reasonable response to plaintiff's complaints of pain. In this case, plaintiff was provided with adequate medical care. When plaintiff's pain was not subsided with medications, McCollum ordered further testing and a consultation with an outside expert. When the expert opined that surgery was necessary, plaintiff underwent surgery only five days later. This delay is not abnormal given that plaintiff was seen by the specialist on a Thursday and scheduled for a CT on Monday. Plaintiff then underwent surgery on Tuesday. This course of treatment does not arise to the level of a constitutional violation.

Id. at 13-14. We note that, in his appeal, Mr. White does not specifically challenge the district court's conclusion that he had only exhausted his deliberate indifference claim against Dr. McCollum, and not against the other defendants.

On appeal, Mr. White makes a generalized argument that the district court erred in its decision, but he provides no specifics. We are aware that, because he is a *pro se* advocate, Mr. White's pleadings must be liberally construed. See Hall v. Bellmon, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991). Nonetheless, he is expected to construct his own arguments and adhere to the rules of procedure. Id. Lacking any more specific argument by Mr. White, we simply consider the propriety of the district court's decision. Included in his generalized disgruntlement with the district court's decision is an argument that the district court denied him due process by deciding his case on a motion to dismiss or

motion for summary judgment, rather than letting him present all of his evidence to a jury.

## DISCUSSION

As indicated above, the district court held that Mr. White had failed to exhaust his administrative remedies for the majority of his claims. More specifically, Mr. White only exhausted his Eighth Amendment deliberate indifference claim against Dr. McCollum. Thus, the district court correctly dismissed all of his other claims as unexhausted. See Jones v. Bock, 549 U.S. 199 (2007).

Furthermore, the record on summary judgment clearly supports the district court's conclusion that Dr. McCollum was not deliberately indifferent to Mr. White's back problems. And, the district court correctly found that there is no evidence that defendants Buser, Drennan or Terrell had any personal participation in the only exhausted claim regarding Mr. White's medical treatment.

Finally, we conclude that the district court did not abuse its discretion in not appointing counsel for Mr. White and in deciding this matter on summary judgment. Mr. White has no free-standing due process right to have his case tried by a jury.

Accordingly, we affirm the district court's grant of summary judgment, for substantially the reasons stated in the district court's memorandum and order.

Mr. White has filed a motion to proceed further without prepayment of fees and/or costs.  We grant his motion, but remind him that he is obligated to continue making partial payments until he has paid the full amount.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge